[Nos. 40516, 40517.    En Banc.    August 7, 1969.]

THE BOEING COMPANY, *Appellant,* v. KING COUNTY, *Respondent.*

KING COUNTY, *Respondent and Cross-appellant,* v. TEXACO, INC., *et al., Defendants,* THE BOEING COMPANY, *Appellant.*\*

*Reported in 457 P.2d 595.

*Holman, Marion, Perkins, Coie & Stone, Francis E. Holman, David E. Wagoner,* and *Phillip E. Gladfelter,* for appellant.

*Charles O. Carroll, James E. Kennedy,* and *Jeremy R. Randolph,* for respondent and cross-appellant.

HILL, J.—We have before us appeals in certain consolidated actions which arise out of a lease by King County to the Boeing Company (hereafter Boeing). This was a 75-year lease of considerable portions of the property generally known as Boeing Field.[1] The lease was executed September 14, 1955, and states that it is made pursuant to the authority of Laws of 1953, ch. 178 (RCW 14.08.120(5)). It provides, *inter alia,* that for each 5-year period after June 30, 1962, the rentals could be readjusted provided that the party to the lease desiring adjustment gives the other party

---

[1]Boeing Field had been the principal airfield serving Seattle until the Port of Seattle opened the Seattle-Tacoma International Airport.

a written request for such adjustment at least 30 days before the commencement of the next 5-year period. The readjustment clause provides further that if the parties fail to reach an agreement on the rentals, they shall submit to arbitration. The language used in the lease is almost verbatim the language of the statute to which we have just referred.

King County is insisting on an arbitration of the rentals for the period beginning July 1, 1967 and ending June 30, 1972; and Boeing is insisting that the arbitration should be stayed as there was no timely request for a readjustment of the rentals. From judgments of the King County Superior Court directing that the arbitration proceed, Boeing appeals; and King County also appeals for reasons hereinafter indicated.

The whole controversy could have been avoided by a little more formality in the operations of county government and little more meticulous attention to detail and verbiage. It becomes here largely a question of semantics.[2] The question is: did King County make a "written request" for a readjustment of rentals for 1967-1972?

May 11, 1967, King County's airport manager sent a letter[3] to the county commissioners stating that the rentals

---

[2] Someone has said that semantics are the worst "antics."

[3] "Board of County Commissioners            May 11, 1967
"King County Courthouse
"Seattle, Washington 98104
"Re: Lease of Airport Property to the Boeing Company

    Resolution No. ....................

"Gentlemen:

    "This is to inform you that on the 30th day of June 1967, the rentals for the above-referenced lease of Airport property are due to be readjusted and fixed by the Board of County Commissioners pursuant to the terms of RCW 36.34.180.

    "It is anticipated that prior to the above date, the undersigned will have a recommendation for the Board as to the amount at which such rentals should be fixed. In the meantime, if you have any question in this matter, please contact the undersigned.

                              "Very truly yours,
                              "King County Airport
                              "Stanley R. Gallup [signed]
                              "Airport Manager"

under the lease with Boeing were due for readjustment on June 30, 1967. He then wrote Boeing on May 22nd, enclosing a copy of the May 11 letter to the county commissioners. In the letter to Boeing[4] he stated that the copy was self-explanatory and asked that if Boeing had any factual information or comment relevant to the readjustment to furnish it to him.

June 8, Boeing informed the county that it doubted whether the May 22 letter complied with the notice requirement of the lease and the applicable statute,[5] and that it questioned whether there could be a rental adjustment for the 1967-1972 period.

In its brief, Boeing asks two questions: (1) Was the letter given by a party to the lease; and (2) Did it constitute a "written request" for rental adjustment? It answers both questions in the negative, and concludes therefrom that no

---

[4]"Mr. John D. Bixby                                May 22, 1967
"Corporate Director of Facilities
"P.O. Box 3707
"Seattle, Washington 98124
"Dear Sir:
"Reference: Readjustment of Rentals
        Under Commissioner's Resolution No. 4618610
    "Enclosed for your information is a copy of a letter to the King County Commissioners in regard to the above subject matter, which is self-explanatory.
    "It would be appreciated if you would furnish to us by return mail any factual information or comments you may have which you deem relevant to the readjustment of the rentals under your leases of Airport Property from the County.
                            "Very truly yours,
                            "KING COUNTY AIRPORT
                            "Stanley R. Gallup [signed]
                            "Airport Manager"

[5]King County insists that the applicable statute is Laws of 1951, ch. 41; RCW 36.34.180, which applies to leases of all county property and provides for readjustment of long-term leases every 5 years. It provides that the readjustment shall be made by the board of county commissioners, and if the board, and the lessee cannot agree, the rentals shall be adjusted by arbitration.
    This, it will be seen, is more favorable to the county since no notice or "request" is necessary. The board makes the adjustment, and if the lessee does not agree, the county and the lessee must submit the issue to arbitration.

request having been made, there should be no readjustment in rentals.

Both questions were answered in the affirmative by the trial court. True, there was no formal resolution by the Board of County Commissioners, and the word "request" appears no place in the May 22nd letter from the airport manager. However, establishing that the letter of May 22 to Boeing was from "King County," two county commissioners made affidavits which state that the airport manager had prior approval of the county commissioners for all steps to be taken by him in an effort to secure a readjustment of the rentals.

Boeing does not question that it had *notice* of the county's desire for a readjustment of the rentals for the 5-year period (1967-1972) and, in fact, it negotiated[6] with King County for several months. When the negotiations appeared fruitless, King County made a demand for arbitration. It seems to us that, under the wording of the statute and the lease, "request" meant no more than "notice," for if the parties did not agree on a readjustment of the rentals, arbitration was required. "Request" implies a right of choice by the person to whom a request is made, *i.e.*, a right in this case to adjust rentals or to refuse to do so. Boeing, however, had no such choice. It could only agree to the readjustment or submit to arbitration with no right of choice as to the final rental figure.

No amount of quibbling over forms and terms avoids the basic fact that Boeing was advised that King County was expecting a readjustment of the lease terms for 1967-1972 and that Boeing was required to negotiate a readjustment or submit to arbitration.

The trial court correctly decided that Boeing had received "a request" from King County within the purview of the lease and statute for the readjustment of the rentals for 1967-1972 and that no agreement or readjustment having been reached, Boeing was obligated to proceed with arbitration.

---

[6] Boeing, however, reserved its right to insist that no "request" had been made.

This disposes of the primary issue in this litigation. There remains a consideration of King County's appeal, on which it urges that the trial court erred in holding that the lease between King County and Boeing was "controlled solely by chapter 178, Laws of 1953." As stated in footnote 5, King County contends that the applicable statute is Laws of 1951, ch. 41 (RCW 36.34.180); we there pointed out the distinction between the two statutes on which the county relies.

■ The parties have both asked for a declaratory judgment as to which statute governs this particular lease: Laws of 1953, ch. 178 (RCW 14.08.120(5)), or Laws of 1951, ch. 41 (RCW 36.34.180).

It was the trial court's view that the lease could have been made under either statute, and that they present alternative and not conflicting procedures. We agree. It was also the trial court's view that it having been specifically stated in the lease that it was prepared pursuant to Laws of 1953, ch. 178, and the lease having quoted the language of that statute in the readjustment clause, it was clearly intended to be the controlling statute. Again we agree.

King County does not have to use that statute in such leases, but having elected to use it, it cannot repudiate some of the terms of the statute merely because it thinks the terms of some other statute are more advantageous to it.

The judgment is affirmed in Boeing's appeal, and also on King County's appeal.

HUNTER, C. J., FINLEY, HAMILTON, and HALE, JJ., concur.

NEILL, J. (dissenting)—I am in accord with the view of the majority that the lease here in issue is governed by RCW 14.08.120 (5), but disagree with the conclusion that the county timely exercised its right to have the rental reviewed for the 1967-1972 term.

The applicable statute, with which the provisions of the lease are consistent, provides:

*And provided further,* That any such lease of real property made for a longer period than ten years shall contain provisions requiring the municipality and the lessee to permit the rentals for each five year period thereafter, to be readjusted at the commencement of each such period, if written request for such readjustment is given by either party to the other at least thirty days before the commencement of the five year period in respect of which such readjustment is requested.

RCW 14.08.120 (5).

It seems quite clear that in order to initiate action for a rental adjustment one of the lease parties must take positive action as, unlike the provisions of RCW 36.34.180, rental review is not automatic.

It necessarily follows that some action is to be taken by either the lessor or lessee which constitutes "a written request for rental adjustment given at least 30 days before the commencement of the next 5-year period (July 1, 1967)."

Therefore, the crux of this case is whether the communication between the lessor county and the lessee prior to July 1, 1967, should be categorized as a "request" for rental adjustment. The majority characterizes this issue as semantics, but I believe that it is of substance. Either the county made a timely request or it did not. Does the May 22, 1967, letter from the airport manager to the lessee enclosing a copy of the interdepartmental letter of May 11, 1967, rise to the status of a request?

Under the rule that words not otherwise defined or altered in meaning by context are to be given their usual and normal meaning, we look to the dictionary and find in Webster's New International Dictionary (2d ed. 1956), that the noun "request" is defined as "Act or an instance of asking for something or some action desired; expression of desire; entreaty; petition; . . . Syn.—Petition, supplication, suit, demand." The term thus connotes a communication of a position or demand. A fair analogy is to compare the request to an offer in contract negotiations. In this lease the acceptance is contractually required and thus may be akin

to an option agreement wherein, by contract, a collateral offer remains open for acceptance. Here the parties agree that the acceptance of a request for rental adjustment is automatic. Applying the usual rules for validity or efficacy of an offer, it is required that a definite proposition be communicated directly to the offeree. *See* Annot., 51 A.L.R.2d 1404 (1957); Corbin on Contracts § 11, p. 25 n.1 (1963). It should be no different here. A county employee sends to the lessee a copy of what amounts to an internal, interoffice memorandum to his employers, the board of county commissioners. This is accompanied by a letter— again from the airport manager and not from the governing board of the county—wherein the lessee is asked for information and comments relevant to rental readjustment. This is not in the nature of a demand, a request, or positive position of the county. At this stage of the negotiation or communication, it is apparent that the airport manager is seeking information with which to advise the commission. A reading of the May 11th letter leads to the logical conclusion that the airport manager is notifying the commission that on June 30, 1967, the Boeing Airport lease is due for review and that he will forward to the board his recommendations as to rentals. The expected next step is for the airport manager to seek facts and figures from which he can make his recommendations—including the comments and facts which he has elicited from the lessee.

It is just as logical to consider that the board of commissioners will, when presented with all facts and figures, leave matters in status quo as to assume they will exercise their right to request an adjustment. *Cf. Jones v. Dexter,* 48 Wn.2d 224, 292 P.2d 369, 51 A.L.R.2d 1399 (1956). These two letters are not requests for rental adjustment, they are no more than preliminary investigation leading to a decision by the commissioners as to whether a request for rental adjustment will be made.

The majority states that the lessee "had *notice* of the county's desire for a readjustment of the rentals," but I think it more accurate to say that the lessee had notice that

the county was seeking factual information and comments preliminary to a decision as to whether or not it would request a rental adjustment. The deadline for such request passed without the county's having communicated its decision to the lessee. Accordingly, I would reverse on Boeing's appeal and affirm on King County's appeal.

ROSELLINI and McGOVERN, JJ., and DONWORTH, J. Pro Tem., concur with NEILL, J.

---

October 15, 1969. Petition for rehearing denied.