143 N.J. Super. 492 (1976)
363 A.2d 917
LONG BRANCH SEWERAGE AUTHORITY, PLAINTIFF,
v.
MOLNAR ELECTRICAL CONTRACTORS, INC.; HEUER, INC.; WANDER IRON WORKS, INC.; C-K AIR CONDITIONING, INC.; SARBO, INC.; AMERICAN ARBITRATION ASSOCIATION, DEFENDANTS.
Superior Court of New Jersey, Chancery Division.
Decided August 5, 1976.
*493 Mr. Laurence C. Stamelman, for plaintiff (Messrs. Stein & Stamelman, attorneys).
Mr. Thomas L. Martin, for defendant Molnar Electrical Contractors, Inc. (Messrs. Ravin, Davis & Mandell, attorneys).
Mr. Ned J. Parsekian, for defendant Heuer, Inc.
Mr. Theodore W. Geiser, for defendant Wander Iron Works, Inc. (Messrs. McElroy, Connell, Foley & Geiser, attorneys).
YACCARINO, J.S.C.
Plaintiff filed an order to show cause and verified complaint seeking an order of arbitration. The matter was heard on the return date of the show cause order. The facts as revealed in the verified complaint indicate that plaintiff entered into a contract or contracts with defendant contractors for the construction of a wastewater treatment plant. The work was awarded to defendants in the following manner:
Contract 4A  General construction  Heuer, Inc.
Contract 4B  Structural steel  Wander Iron Works, Inc.
Contract 4C  Plumbing  C-K Air Conditioning, Inc.
*494 Contract 4D  Heating/Ventilating  Sarbo, Inc.
Contract 4E  Electric  Molnar Electrical Contractors, Inc.
While each contractor had a separate contract with plaintiff dealing with the specific work to be performed by the contractor, the contracts contained many of the same terms. One such common term related to arbitration and provided:
It is mutually agreed that any matters of controversy involving time or financial consideration that cannot be settled by the parties to this Contract shall be submitted to arbitration and that the award of the arbitrators, except when reached by fraud or mistake, shall be binding upon both parties.
Should there be any dispute or any questioned decision of the Owner or Engineer which is subject to arbitration, it shall be promptly submitted to arbitration upon demand by either party to the dispute. The Contractor shall not delay the work because arbitration proceedings are pending unless he shall have written permission from the Owner to do so, and such delay shall not extend beyond the time when the arbitrators shall have had the opportunity to determine whether the work shall continue or be suspended pending decision by the arbitrators of such a dispute. Any demand for arbitration shall be in writing and shall be delivered by the Owner and the adverse party either by personal delivery or by registered mail addressed to the last known address of each within ten (10) days of receipt of the Owners decision, and in no event after final payment has been made and accepted. Should the Owner fail within a reasonable period to make a decision, a demand for arbitration may then be made as if the Owner's decision had been rendered against the party demanding arbitration.
No one shall be qualified to act as an arbitrator who has directly or indirectly, any financial interest in the Contract or who has any business or family relationship with the Owner, the Contractor, or the Engineer. Each arbitrator selected shall be qualified by experience and knowledge of the work involved in the matter to be submitted to arbitration.
Arbitration shall be by and in accordance with the procedure and standards of the American Arbitration Association.
This was not a situation where the Authority engaged a general contractor who then employed subcontractors on the various phases of construction. It is important to note that the relationship between the various contractors was not contractual. They simply contracted with plaintiff to *495 perform particular portions of the project. The individual contractors had to have been aware that similar provisions for arbitration were in each contract, inasmuch as the provision was included in the specifications supplied to all bidders.
The contract completion date was December 4, 1975. The project was not completed by that date and is still in progress. The current schedule date for completion is September 5, 1976.
Defendant Molnar Electrical Contractors, Inc., has claimed delays caused by defendant Heuer, Inc., and by plaintiff. Defendant Heuer, Inc., claims that defendant Molnar has been responsible for the delay.
On or about June 3, 1976 defendant Molnar filed a demand for arbitration against plaintiff. Plaintiff sought to answer, counterclaim and third-party the other defendants into the arbitration. The American Arbitration Association (AAA) said there was no basis for such third-party arbitration practice, absent all parties consent. Molnar does not consent.
Plaintiff claims that it is necessary to conduct the arbitration as a unit to avoid conflicting claims and unnecessary expense in instituting separate arbitration proceedings.
Defendant Molnar has filed a brief and the affidavits of Mr. Patrick Westerkamp, a regional director of the AAA, Mr. John Molnar, president of defendant corporation, and Mr. Thomas Martin, counsel for defendant.
Defendant C-K Air Conditioning, Inc., has filed an answer which endorses the position of plaintiff, while defendant Sarbo, Inc., has answered seeking dismissal of the complaint.
The questions presented by this litigation are somewhat novel. In order to gain a proper perspective the history involved in the judicial attitude toward arbitration must be briefly reviewed. Justice Jacobs, in LaStella v. Garcia Estates, 66 N.J. 297 (1975), explained the relationship of the judiciary vis-a-vis arbitration as follows:
The English common law at the time of the American Revolution was undoubtedly hostile to arbitrations. See Frank, J., in Kulukundis *496 Shipping Co. v. Amtorg Trading Corp., 126 F.2d 987, 983 (2 Cir.1942), and Hough, J., in United States Asphalt R. Co. v. Trinidad Lake P. Co., 222 F. 1006, 1007 (S.D.N.Y. 1915). Thus it permitted either party to an arbitration of an existing dispute to withdraw at any time before the actual award, and, beyond that, it declared that an agreement to arbitrate future disputes was against public policy and not enforceable. See Kulukundis Shipping Co. v. Amtorg Trading Corp, supra, 126 F. 2d at 982-983; Birdseye, Arbitration and Business Ethics 62 (1926); cf. Sayre, "Development of Commercial Arbitration Law," 37 Yale L.J. 595 (1928). Whether the judicial hostility originated in ancient jealousies and fears of being ousted from jurisdiction (Lord Campbell in Scott v. Avery, 5 H.L. Cas. 811, 853, 10 Eng. Rep. 1121, 1138 (1856)) or whether it originated in less ignoble considerations (6A Corbin, Contracts § 1433 (1962) need not concern us; that there was in fact judicial hostility which must have had its effect on common law doctrines bearing on arbitrations would appear to be beyond dispute. See Shribman v. Miller, 60 N.J. Super. 182, 191 (Ch. Div. 1960).
The English common law permitting revocation prior to the award and declaring agreements to arbitrate future disputes to be unenforceable was carried over into the common law of the various states. See 6 Williston, Contracts § 1919 (Rev. ed 1938); 6A Corbin, supra, § 1433. In most states the common law has since been altered by statute. See 6 Williston, supra, § 1920; Sturges, Commercial Arbitrations and Awards § 26 (1930); Domke, The Law and Practice of Commercial Arbitration § 4.01 (1968). In some states it has been altered by judicial decision. See United Ass'n of Journ. & App. of Plumbing, Etc. v. Stine, 76 Nev. 189, 351 P.2d 965 (1960); Park Const. Co. v. Independent School Dist. No. 32, 209 Minn. 182, 296 N.W. 475 (1941); Ezell v. Rocky Mountain Bean & Elevator Co., 76 Colo. 409, 232 P. 680 (1925).
In Stine, supra, the Nevada Supreme Court declined to follow the rule which had at common law declared that covenants for arbitration of all future disputes are "contrary to public policy". 76 Nev. at 204, 351 P.2d at 973. In the course of his comprehensive opinion, Justice Badt pointed to the questionable underfootings of the rule when originally enunciated and to the highly changed current circumstances; he quoted approvingly from Justice Wolfe's concurring opinion in Latter v. Holsum Bread Co., 108 Utah 364, 160 P.2d 421 (1945), where the Justice had suggested that it was due time that courts evidenced `a change in attitude to encourage rather than discourage use of arbitration machinery in cases where such machinery is well adopted' (108 Utah at 375, 160 P.2d at 426); and he held that a provision in a labor agreement for the submission of future controversies to arbitration was entirely lawful and fully enforceable despite the earlier common law notions to the contrary. 76 Nev. at 202-214, 351 P.2d at 972-978. [at 299-300]
*497 Thus, at present, arbitration agreements are to be "construed according to the usual methods of contract interpretation whereby a mutual, reasonable and meaningful design is sought from the language used by the parties and maximum effect is given their intention." Keppler v. Terhune, 88 N.J. Super. 455, 462 (App. Div. 1965). Similarly, they "should be read liberally to find arbitrability if reasonably possible." Moreira Const. Co. v. Wayne Tp., 98 N.J. Super. 570, 576 (App. Div.), certif. den. 51 N.J. 467 (1968).
Defendant Molnar relies upon the fact that "[a]rbitration, as commonly understood, is a proceeding voluntarily initiated by the parties, and at common law its basis is their voluntary act." 5 Am. Jur.2d, Arbitration § 9 at 526 (1962). In general, as explained above, there was no enforcement at common law of arbitration agreements. Id, § 36, at 548. Thus, the power of New Jersey courts to order performance of an arbitration agreement depends upon statute, N.J.S.A. 2A:24-1 et seq. The New Jersey act, unlike that of New York, makes no provision for specifically ordering consolidation of two or more arbitrations brought under separate contracts. See William C. Blanchard Co. v. Beach Concrete Co., 121 N.J. Super. 418, 428 (Ch. Div. 1972). In Blanchard Judge Herbert was faced with a group of conflicting claims made by a general contractor and two subcontractors. There was what one might term a vertical relationship between the parties. Judge Herbert viewed the authority of the court to consolidate and determined that there was none, either legislatively or via general equity powers. Id. at 429-30. See generally, Annotation, "State Court's Power to Consolidate Arbitration Proceedings," 64 A.L.R.3d 528 (1975).
Thus, absent specific language within the contracts to the effect that all parties will participate in a consolidated arbitration, or consent to a multi-party arbitration, our courts have traditionally refused to order consolidation. See Hudik-Ross, Inc., v. 1530 Palisades Ave. Corp., 131 N.J. Super. 159, 168 (App. Div. 1974). Contra, James Stewart *498 Polshek & Associates v. Bergen Cty. Iron Works, 142 N.J. Super. 516 (Ch. Div., June 15, 1976).
This court is faced with a situation different from those presented in the Hudik-Ross and Blanchard cases. There is no general contractor with subcontractors doing independent work. All work was let through plaintiff. The affidavits indicate, and are uncontradicted on the point, that substantial portions of the contracts are the same except as they relate to the specific work to be accomplished.
Thus, this is not a strict consolidation matter but rather one involving more general contract rights. To say that all would be bound to the same arbitration agreement if the contracts were formed as a unit, but not so if the same terms are placed in individual contracts, is to deny logic. This is particularly so where all the parties had knowledge of the general arbitration language. The relationship of the parties now before the court may be viewed as being more "horizontal" than "vertical." While there may be a conflict in case law as to whether a court will order a consolidation of arbitrations, it will enforce a common arbitration agreement where (1) the contract clauses are identical, and (2) the parties had knowledge of the common arbitration language.
It is possible that in certain circumstances only one subcontractor would have a claim against the general contractor or that the claims of different subcontractors might be able to be treated independently by the general. In such situations, there would appear to be no need to consolidate, although such a practice may be convenient. However, where there are conflicting claims, a common contract term, and knowledge by all parties of the common term, enforcement of a one-unit arbitration may be required to avoid conflicting and inconsistent results. This would seem to be in keeping with the intention of the parties.
The claims of subcontractor against subcontractor present the court with a more difficult problem. Here no direct contract privity exists. Unless some implied contract or third-party *499 beneficiary relationship, as yet unstated and undemonstrated, may be shown to have existed, no enforceable right to arbitration is present concerning the separate defendants.
What is required in the prosecution of the arbitration as a unit will not be consolidation in the customary judicial sense. Rather, the arbitration will be directed to a single arbitration panel. Conflicting claims may be laid out before the panel. Thus, defendants not involved with particular claims then considered need not be present. The procedures are to be conducted and the awards made in accord with standard AAA practice as per the general contract clauses.
An order will be entered conforming with the views expressed herein. Plaintiff's order to show cause is discharged; the matter shall proceed to arbitration.