[No. 5267–44184–1. Division One. October 10, 1977.]

KING COUNTY, *Appellant,* v. THE BOEING COMPANY, *Respondent.*

*Christopher T. Bayley, Prosecuting Attorney,* and *J. Richard Quirk* and *Diane E. Dray, Deputies,* for appellant.

*Perkins, Coie, Stone, Olsen & Williams, De Forest Perkins, Graham H. Fernald,* and *Richard S. Twiss,* for respondent.

CALLOW, J.—This case involves a contract dispute between King County and the Boeing Company over the formula by which rentals are to be readjusted under a 75–year lease between the parties for 98.15 acres of property at the Boeing Field/King County International Airport. The

declaratory judgment action brought by King County seeking judicial construction and interpretation of sections of the lease was dismissed on the ground that the issues were for determination by the appointed arbitrators rather than the Superior Court. The County appeals.

The lease was entered into on September 14, 1955. In addition to the 98.15 acres, Boeing was also granted the use of concrete runways and taxiways totalling 70 acres and the use of other aircraft related facilities at Boeing Field. An annual rental was agreed to by the parties and set forth in the lease.[1] The original "Yearly Amount" was $118,861 in 1955.

The lease required Boeing to permit the County to readjust the rentals for each 5–year period after June 30, 1962.[2]

[1]Section 3 of the lease provides in part:

"Subject to Sections . . . 11 . . ., the amount to be paid by Lessee as rental for the Leased Property . . . and as payment for the interests, rights and privileges granted to Lessee by this instrument, shall be $118,192.00 per year.

". . .

"The amount payable per year in accordance with the foregoing paragraphs of this Section relates to calendar–year periods and, as adjusted from time to time pursuant to this and other Sections of this lease, is hereinafter referred to as the Yearly Amount. . . . Adjustment of the Yearly Amount shall be made on a fractional–year basis in instances where all or a part of the property now or hereafter subject to this lease is subject thereto in a particular year for a fraction thereof only.

". . .

"The original Yearly Amount under this lease was established after taking into account (1) the interests, rights and privileges granted to, and obligations assumed by, Lessee under this instrument and the over–all cost to the County of maintaining and operating the Airport, (2) the lower per–square–foot rates which are to continue to be payable to the County for areas on the 'West Side' (as hereinafter defined), under Items (a), (b), (e), (f), (g) and (h) of Section 4, and (3) all other pertinent facts and circumstances. . . ."

[2]Section 11 of the lease provides in part:

"Except as provided in the second paragraph of this Section 11, the County and Lessee are hereby required to permit the rentals under this lease (the Yearly Amount specified in Section 3) for each five–year period after June 30, 1962, to be readjusted at the commencement of each such period, if written request for such readjustment is given by either party to the other at least thirty days before the commencement of the five–year period in respect of which such readjustment is requested. In the event such request is given and the parties cannot agree upon

The rental for the second 5–year period (1962–1967) was negotiated between the parties. In 1967, King County notified Boeing of the County's intention to renegotiate the rentals paid by Boeing for the 1967–1972 period. The parties could not agree as to the proper rental to be paid by Boeing. King County sought to have the matter referred to a 3–member arbitration panel pursuant to the lease. Boeing objected to arbitration on the ground that King County had not followed the notice requirements of RCW 14.08.120(5). The County brought an action to compel arbitration, to which Boeing answered and sought declaratory relief, praying for:

A declaratory judgment determining that the annual rental under the lease for the period July 1, 1967 to June 30, 1972 is the amount in effect thereunder as of June 30, 1967 and that no rental readjustment for such period is required under the terms of such leases in law.

In *Boeing Co. v. King County*, 76 Wn.2d 493, 457 P.2d 595 (1969), the court construed the lease, stating at page 498:

The parties have both asked for a declaratory judgment as to which statute governs this particular lease: . . .

. . . It was also the trial court's view that it having been specifically stated in the lease that it was prepared pursuant to Laws of 1953, ch. 178 [RCW 14.08.120], and

the rentals for such five–year period, they shall submit to have the disputed rentals for such five–year period adjusted by arbitration. The Lessee shall pick one arbitrator and the Board of County Commissioners of King County one, and the two so chosen shall select a third, and such Board of Arbitrators, after a review of all pertinent facts, may increase or decrease such rentals, or continue the previous rate thereof. Property, buildings, installations, improvements or equipment constructed, installed or owned by the Government or Lessee, and buildings, installations, improvements, concrete or asphalt surfacing or equipment owned by the County and located on the 'West Side' of the Airport shall not be considered as part of the Leased Property for the purposes of determining the amount of any future readjustment of rentals. Whenever any readjustment of the Yearly Amount specified in Section 3 is effected, either by mutual agreement of the parties or by arbitration as required by this Section, the parties or the Board of Arbitrators, as the case may be, shall specify any changes in the 'Reference Rate List' set forth in Section 3 that are then considered to be appropriate and such changes shall at that time be incorporated in such list."

the lease having quoted the language of that statute in the readjustment clause, it was clearly intended to be the controlling statute. Again we agree.

Complying with the court's order to arbitrate, arbitration was conducted during the summer of 1970. During the arbitration, the parties expressed conflicting positions on the theory of valuation to be applied. King County urged that the rentals be based on the same standard as other rentals at Boeing Field, to wit, the fair market value of the property. Boeing argued that the rental should be determined as follows: (a) All non–Boeing rentals to be subtracted from all airport operating expenses, and (b) if there is a deficit between expenses and income, Boeing rentals are to equal the deficit and the County is to be kept from operating the airport at a loss. Boeing argued that the terms of the lease require the "keep whole" theory to be applied by the arbitrators in their efforts to readjust the rentals. At the conclusion of the hearing, the arbitrators entered an award encompassed in a written order. While the arbitrators noted that two principal valuation theories were presented, they did not state which theory or theories they had used or which theory governed the rental adjustments. The rental set by the arbitrators was $180,450 per year for the 1967–1972 period.

In May 1972, King County advised Boeing of its intention to readjust the rentals pursuant to section 11 of the lease for the 1972–1977 period. Negotiations between the parties took place until it became apparent that they were unable to agree on a new rental figure. On January 31, 1975, the County notified Boeing of its intention to submit the dispute to arbitration and advised Boeing of the identity of the County's arbitrator. King County's notice of intent to arbitrate stated it was the County's intention to argue that the 1972–1977 rental should be based on the fair market value of the property. The notice also stated that in the event Boeing did not agree with this interpretation the County would seek a declaratory judgment prior to arbitration as to which theory should be used by the arbitrators.

The parties could not agree upon the interpretation of the lease rental readjustment formula, and King County then initiated the declaratory judgment action which is the subject matter of this appeal.

The King County complaint asked the Superior Court to issue a decree which would require the arbitrators:

a. To use the fair market value appraisal theory in determining the rental readjustment for the 1972–77 period.

b. To disregard the effect of any taxes levied on the leasehold interest of defendant in the property.

and which would further command and instruct the arbitrators:

c. [As to the] effective date and amount of interest, if any to be applied to the award of the arbitrators.

d. To set forth the basis for their award by entering findings and conclusions with their award.

e. [To] hold the arbitration hearing in a time, place and manner which will permit the public to attend, including a ten day notice and a location providing adequate facilities for public attendance.

On January 21, 1976, Boeing filed a motion to dismiss the County's complaint or, in the alternative, for an order staying judicial proceedings. Boeing claims that the County ignores the consideration given by the arbitrators in the prior arbitration to issues which the County now contends can only be resolved by the judicial system. Boeing asserts that in 1970 the County submitted a memorandum to the arbitrators regarding "its contention that fair market rental value is the mandatory standard for determining the appropriate rentals," and that this contention was rejected by the arbitrators. Boeing asserts that the present suit asked the Superior Court to decide the same question, *i.e.,* whether fair market rental value is the sole appropriate valuation standard. The Superior Court granted Boeing's motion to dismiss on the grounds that the issues raised in the complaint were to be considered and determined by the arbitrators without limitation or restriction by the Superior Court.

The issue presented is whether either party to a written agreement is entitled under RCW 7.24 to a declaratory judgment interpreting the instrument prior to arbitration of a dispute arising under the agreement.

We answer the question presented in the negative.

King County states that it is entitled to a declaratory judgment under RCW 7.24, interpreting provisions of its lease with Boeing before arbitration of a dispute arising under the lease agreement may take place. The County bases this assertion on the proposition that the provision allowing for arbitration in the event of a failure to agree was not intended to include the arbitration of disputes over the theory of valuation to be used in determining the "Yearly Amount." The County likewise proposes that the provision of RCW 14.08.120(6), which states that rentals are to be "reasonable and uniform," requires the application of a single theory of valuation for all airport lease agreements.

■ The purpose of the Uniform Declaratory Judgments Act "is to settle and to afford relief from uncertainty and insecurity with respect to rights, status and other legal relations; and is to be liberally construed and administered." RCW 7.24.120. *Diversified Indus. Dev. Corp. v. Ripley*, 82 Wn.2d 811, 514 P.2d 137 (1973), commencing at page 815, said that,

> before the jurisdiction of a court may be invoked under the act, there must be a justiciable controversy: (1) which is an actual, present and existing dispute, or the mature seeds of one, as distinguished from a possible, dormant, hypothetical, speculative, or moot disagreement, (2) between parties having genuine and opposing interests, (3) which involves interests that must be direct and substantial, rather than potential, theoretical, abstract or academic, and (4) a judicial determination of which will be final and conclusive.

The statutory purpose of the act and the indication that it should be liberally construed does not make the issuance of a declaratory judgment mandatory. *See Bell v. Associated Independents, Inc.*, 143 So. 2d 904, 908, 12 A.L.R.3d 847

(Fla. Dist. Ct. App. 1962); Annot., 12 A.L.R.3d 854 (1967). The granting of a declaratory judgment is discretionary. *Hanes Corp. v. Millard,* 531 F.2d 585, 591 (D.C. Cir. 1976); *Brohawn v. Transamerica Ins. Co.,* 276 Md. 396, 347 A.2d 842, 849 (1975); *Svoboda v. Hahn,* 196 Neb. 21, 241 N.W.2d 499, 503 (1976); *State ex rel. Lynch v. Conta,* 71 Wis. 2d 662, 239 N.W.2d 313, 322 (1976). Further, where a plaintiff has a "completely adequate remedy available" apart from the declaratory judgment requested, such a plaintiff "is not entitled to relief by way of a declaratory judgment". *Reeder v. King County,* 57 Wn.2d 563, 564, 358 P.2d 810 (1961).

Boeing asserts that RCW 7.04.010, RCW 14.08.120(5), and the arbitration clause of section 11 of the lease, require the arbitration of any dispute arising under the contract concerning rentals. Boeing argues that the presence of this remedy obviates any need for reliance upon a declaratory judgment to resolve the dispute over the theory of valuation to be used in determining the "Yearly Amount." We agree.

■ Arbitration is a contractual remedy for the settlement of disputes by extrajudicial means. *Thorgaard Plumbing & Heating Co. v. County of King,* 71 Wn.2d 126, 131, 426 P.2d 828 (1967); *Greyhound Corp. v. Division 1384 of Amalgamated Ass'n of St., Elec. Ry. & Motor Coach Employees of America,* 44 Wn.2d 808, 811, 271 P.2d 689 (1954). It is a remedy freely bargained for by the parties, *Waterbury Bd. of Educ. v. Waterbury Teachers Ass'n,* 168 Conn. 54, 357 A.2d 466, 470 (1975), and "provides a means of giving effect to the intention of the parties, easing court congestion, and providing a method more expeditious and less expensive for the resolution of disputes." *Vernon v. Drexel Burnham & Co.,* 52 Cal. App. 3d 706, 715, 125 Cal. Rptr. 147, 152 (1975). There is a strong public policy in favor of such a remedy (*Georgia Power Co. v. Cimarron Coal Corp.,* 526 F.2d 101, 106 (6th Cir. 1975), *cert. denied,* 425 U.S. 952 (1976); *Fuller Co. v. Compagnie Des Bauxites De Guinee,* 421 F. Supp. 938, 947 (W.D. Pa. 1976); *Modern Constr., Inc. v. Barce, Inc.,* 556 P.2d 528, 529 (Alas. 1976)),

but it should not be invoked to resolve disputes that the parties have not agreed to arbitrate. *Atkinson v. Sinclair Refining Co.,* 370 U.S. 238, 241, 8 L. Ed. 2d 462, 82 S. Ct. 1318, 1320–21 (1962); *Wheeler v. St. Joseph Hosp.,* 63 Cal. App. 3d 345, 355, 133 Cal. Rptr. 775, 782 (1976); *Flood v. Country Mut. Ins. Co.,* 41 Ill. 2d 91, 242 N.E.2d 149, 151 (1968); *Regeant of Shelby, Inc. v. Leumas Knitting Mills, Inc.,* 54 App. Div. 2d 667, 387 N.Y.S.2d 843, 844 (1976).

It has been held that:

> Provisions in a contract providing for arbitration must be definite enough so that the parties at least have some idea as to what particular matters are to be submitted to arbitration and set forth some procedures by which arbitration is to be effected.

*Wood–Hopkins Contracting Co. v. C.H. Barco Contracting Co.,* 301 So. 2d 479, 480 (Fla. Dist. Ct. App. 1974). In interpreting arbitration provisions, the instrument should be considered as a whole, in light of all the circumstances accompanying the transaction, and defined in a manner that will carry forward the expressed intent of the parties. *Simpson v. Simpson,* 194 Neb. 453, 232 N.W.2d 132, 136–37 (1975); *Long Branch Sewerage Authority v. Molnar Elec. Contractors, Inc.,* 143 N.J. Super. 492, 363 A.2d 917, 920 (1976).

Arbitration clauses should be liberally interpreted when the issue contested is the scope of the clause. *Michael v. SS Thanasis,* 311 F. Supp. 170, 178 (N.D. Cal. 1970). If the scope of an arbitration clause is debatable or reasonably in doubt, the clause should be construed in favor of arbitration unless it can be said that it is not susceptible to an interpretation that covers the asserted dispute. *Hanes Corp. v. Millard, supra* at 598; *Griffin v. Semperit of America, Inc.,* 414 F. Supp. 1384, 1390–91 (S.D. Tex. 1976); *Long v. Marion Mfg. Co.,* 402 F. Supp. 69, 75 (D.S.C. 1974), *aff'd,* 511 F.2d 1398 (1975); *Pacific Inv. Co. v. Townsend,* 58 Cal. App. 3d 1, 10, 129 Cal. Rptr. 489, 493 (1976); *Exber, Inc. v. Sletten Constr. Co.,* 92 Nev. 721, 558 P.2d 517, 522

(1976). *Hanes Corp. v. Millard, supra* at 598, stated the purpose of this rule thusly:

[It] implements several important policies: it eases court congestion; it provides broad latitude to permit effectuation of the intent of the parties; and it limits the delay in dispute resolution that would occur were a wide range of issues to require judicial consideration prior to commencement of arbitration—delay that would undermine a principal objective of arbitration itself.

If an arbitrable issue exists, the parties should not be deprived of the benefits of the agreement for which they bargained. *Hanes Corp. v. Millard, supra* at 598; *Exber, Inc. v. Sletten Constr. Co., supra.*

The issue presented concerns the interpretation of a lease provision. King County asks that the arbitrators be directed as to the method by which they are to arrive at the rent that Boeing is to pay. The arbitration clause does not contain any indication that the parties intended, at the time of signing the lease, that the arbitrators be so limited and circumscribed. Section 11 of the lease encompasses all questions, both procedural and substantive, that may arise out of any "rental" disputes. *Cf. Bel Pre Medical Center, Inc. v. Frederick Contractors, Inc.,* 21 Md. App. 307, 320 A.2d 558, 572 (1974).

▮ RCW 14.08.120 does not require a contrary reading of the lease. RCW 14.08.120(5) reads in part:

*Provided,* That any such lease of real property for aircraft manufacturing or aircraft industrial purposes or to any manufacturer of aircraft or aircraft parts or for any other business, manufacturing or industrial purpose of operation relating to, identified with or in any way dependent upon the use, operation or maintenance of the airport, or for any commercial or industrial purpose may be made for any period not to exceed seventy–five years: *And provided further,* That any such lease of real property made for a longer period than ten years shall contain provisions requiring the municipality and the lessee to permit the rentals for each five year period thereafter, to be readjusted at the commencement of each such period, if written request for such readjustment is given by

either party to the other at least thirty days before the commencement of the five year period in respect of which such readjustment is requested. If in such event the parties cannot agree upon the rentals for such five year period they shall submit to have the disputed rentals for such five year period adjusted by arbitration. The lessee shall pick one arbitrator and the governing body of the municipality one, and the two so chosen shall select a third, and such board of arbitrators after a review of all pertinent facts may increase or decrease such rentals, or continue the previous rate thereof.

Subsection (6) reads in part:

(6) To determine the charges or rental for the use of any properties under its control and the charges for any services or accommodations, and the terms and conditions under which such properties may be used: *Provided,* That in all cases the public is not deprived of its rightful, equal and uniform use of such property. Charges shall be reasonable and uniform for the same class of service and established with due regard to the property and improvements used and the expense of operation to the municipality.

Subsection (5) requires arbitration if the parties reach an impasse upon rentals for any 5–year period where the rentals are to be readjusted, and subsection (6) does not weaken the requirement of arbitration, but merely imposes a standard upon the arbitrators by requiring that (1) the public not be deprived of its "rightful, equal and uniform use" of the airport, and (2) that the "charges shall be reasonable and uniform for the same class of service and established with due regard to the property and improvements used and the expense of operation to the municipality." While subsection (6) does require that the arbitrators' final determination of a rental amount be reached with the public interest in mind, it does not limit the arbitration clause of the lease in such a way as to allow arbitration of the amount of rent while disallowing arbitration of the procedure employed in arriving at this amount. The arbitrators are free to consider all reasonable theories of valuation.

We agree with the trial court that "the issues sought to be raised and adjudicated in these proceedings are appropriately for the consideration and determination of the arbitrators" rather than the judiciary.

Boeing has moved that this appeal be dismissed as moot. However, we consider the issue to be a continuing one which we should, as we have, take cognizance of under the standards enunciated in *Leonard v. Bothell*, 87 Wn.2d 847, 557 P.2d 1306 (1976); *Hartman v. State Game Comm'n*, 85 Wn.2d 176, 532 P.2d 614 (1975); *Diversified Indus. Dev. Corp. v. Ripley*, 82 Wn.2d 811, 514 P.2d 137 (1973); *In re Elliott*, 74 Wn.2d 600, 446 P.2d 347 (1968).

The dismissal of the action for a declaratory judgment is affirmed.

ANDERSEN, J., concurs.

WILLIAMS, J., (concurring)—Although I concur in affirming the judgment of dismissal, I believe the subject of the appeal is moot and the issue is not one of substantial public interest.