**DOCUTEL OLIVETTI CORPORATION, Plaintiff and Respondent,**

v.

**DICK BRADY SYSTEMS, INC., and Richard Brady, Defendants and Appellants.**

No. 20835.

Supreme Court of Utah.

Dec. 15, 1986.

Lynn G. Foster, John R. Merkling, Salt Lake City, for defendants and appellants.

Gordon R. McDowell, Jr., Salt Lake City, for plaintiff and respondent.

DURHAM, Justice.

Defendants Dick Brady Systems, Inc., and Richard Brady appeal from an order of the Third District Court denying a motion to dismiss or stay this action pending arbitration.[1] We reverse.

On February 17, 1982, Dick Brady Systems, Inc. ("Systems"), and Olivetti Corporation ("Olivetti"), a predecessor to plaintiff Docutel Olivetti Corporation ("Docu-

tel"), entered into a contract under which Systems became an authorized Olivetti dealer. Paragraphs 10 and 12 of that agreement are at issue in this controversy. Paragraph 10 provides:

> Dealer [Dick Brady Systems] hereby grants Olivetti a security interest in all Olivetti brand equipment and inventory which Dealer presently owns or may hereafter acquire and any additions or accessions thereto and the proceeds thereof. Dealer authorizes Olivetti to sign and file financing statements in favor of Olivetti. Upon request, Dealer agrees to execute such financing statement(s). If an event of default by Dealer occurs under any credit agreement with Olivetti, Olivetti may, among other remedies, avail itself of any remedy in effect now or at the time of default under the Uniform Commercial Code or any similar statute. In the event Olivetti successfully brings legal action against Dealer for the collection of an unpaid account, Dealer agrees to pay all reasonable collection costs and legal expenses including reasonable attorney's fees.

Paragraph 12 states:

> All disputes arising under this Agreement or pertaining in any manner to the dealership created by this Agreement shall be resolved by arbitration by an Appeal Board in accordance with the then-current Commercial Arbitration Rules of the American Arbitration Association ("A.A.A.").

On the same day the agreement was signed, Richard Brady signed a personal guaranty for all debts owed to Olivetti by Systems.

On January 24, 1985, Docutel filed a complaint against Systems and Richard Brady in Third District Court, seeking recovery of a debt allegedly owed to Docutel. Docutel alleged four theories of recovery of the same debt as separate "claims" in the complaint: (1) a $49,252.60 claim against Sys-

---

1. Defendants also appeal the district court's subsequent denial of defendants' objections to the order denying their motion to stay or dismiss. Our resolution of the appeal on the first order

in defendants' favor makes it unnecessary for us to address issues relating to the denial of defendants' objections.

tems for goods delivered and not paid for; (2) a claim seeking to hold Richard Brady personally liable on his guaranty for the same $49,252.60 delinquency; (3) a claim apparently attempting to hold Richard Brady liable for the same debt on an "alter ego" theory; and (4) a claim against Systems and Richard Brady for the same debt, based on the assertion that paragraph 10 of the dealership agreement created a security interest in Olivetti. All four claims were accompanied by requests for attorney fees.

Defendants did not answer the complaint; instead, they filed a motion requesting that the state court dismiss or stay the state court action pending arbitration. Before the motion to dismiss or stay was heard, defendants placed their counterclaims and offsets in arbitration and filed a petition in the federal district court for Utah seeking relief pursuant to the Federal Arbitration Act, 9 U.S.C.S. § 4 (1978). Docutel answered the federal petition and sought affirmative relief. At a hearing, the federal district court judge continued the matter pending the disposition of the motion to dismiss or stay in the state court. On May 24, 1985, the state district court judge denied defendants' motion to dismiss or stay, on the theory that the specific provisions of paragraph 10 took precedence over the arbitration clause set forth in paragraph 12 and that arbitration of all claims was not required.

On August 8, 1985, the federal district court judge[2] issued an order and findings of fact and conclusions of law. He enjoined the parties from litigating the third cause of action in either state or federal court, but allowed litigation of the fourth cause of action. The federal judge enjoined further litigation of the first and second causes of action except to the extent that the state court determined that those claims were based on separate credit agreements for collection of unpaid accounts or otherwise, pursuant to paragraph 10 of the dealership agreement.[3] The Utah district court had made no determination in its earlier order of whether the first and second causes of action were in fact covered by paragraph 10.

■ Docutel contends that this Court lacks jurisdiction to review the district court's denial of defendants' motion to stay. This contention is without merit. We hold, for reasons set forth below, that we have jurisdiction pursuant to U.C.A., 1953, § 78–31a–19(1) (Supp.1986), which provides for the appeal of any court order denying a motion to compel arbitration.[4]

Section 78–31a–19 became effective April 29, 1985, several months before defendant filed the notice of appeal in this action; Docutel's position is that section 78–31a–19 is not applicable to this action because its complaint was filed before the effective

---

**2.** The federal action was reassigned to a new judge between the original hearing in federal court and the final decision in August.

**3.** We are puzzled by the federal court's treatment of the claim in accordance with the characterizations set forth in the complaint. Plaintiff is suing Brady and Dick Brady Systems to collect the same alleged debt. By allocating the claim in part to litigation and in part to arbitration based only upon the language of the complaint, the federal court has created an entirely avoidable set of problems. For example, if simultaneous judicial and arbitration proceedings rendered inconsistent results, the parties could be faced with a situation in which a court had reviewed the evidence and determined Brady and Systems not liable, and an arbitrator, whose decision could be enforced as a judgment, had reviewed the same evidence and determined that Brady and Systems should pay

the same debt. Further, we do not think that an agreement to arbitrate should be interpreted so narrowly that its application may be avoided by choosing to plead one legal theory instead of another. Such narrow interpretation is inconsistent with the strong state and federal policies favoring arbitration and indeed invites potential litigants to attempt to escape arbitration by clothing their disputes in different legal theories.

**4.** Plaintiff points out that defendants did not style their motion as one to compel arbitration; however, the motion filed by defendants was intended to compel arbitration and will be treated as such. Plaintiff also alleges that defendants' motion was not served as a summons in accordance with the Code. Plaintiff has, however, demonstrated no prejudice as a result of the deficiency in service and in fact responded to the motion in the trial court.

date of that legislation. Whether legislation affects litigation pending when the legislation becomes effective depends on whether the legislation is substantive or procedural. In *State Department of Social Services v. Higgs*, 656 P.2d 998 (Utah 1982), we stated: "Procedural statutes enacted subsequent to the initiation of a suit which do not enlarge, eliminate or destroy vested or contractual rights apply not only to future actions, but also to accrued and pending actions as well." *Id.* at 1000 (citations omitted). Thus, we must determine whether section 78–31a–19 is a substantive or procedural provision.

In *Higgs*, the State of Utah filed a complaint seeking our review of an administrative order sustaining employee grievances against the State. The State alleged error in the district court's refusal to apply a statute in effect at the time the action was commenced. The Grievance Procedure Act in effect at the commencement of the action allowed appeal to the district court after the completion of a five-step administrative procedure. After the action was commenced, but before a complaint was filed in the district court seeking review of the administrative ruling, the Grievance Act was replaced by the Personnel Management Act, which required a six-step administrative procedure before a right to judicial review accrued. We determined that the method for obtaining judicial review was procedural not substantive and that the State was therefore required to complete the six-step procedure provided in the later Act prior to seeking judicial review.

In deciding *Higgs*, we relied upon *Boucofski v. Jacobsen*, 36 Utah 165, 104 P. 117 (1909), in which we held that a statute allowing trial judges to make additional findings of fact and conclusions of law after entry of judgment applied to actions pending when the statute became effective. We reasoned that a statute is procedural when it provides a remedy for already existing rights or merely adds to or provides a substitute for already existing remedies. *Id.* at 171–72, 104 P. at 119 (citation omitted). We also determined that considera-

tions of "convenience, reasonableness and justice" should be taken into account in making determinations of legislative intent. *Id.* at 172, 104 P. at 119–20.

Section 78–31a–19 grants no new substantive rights to plaintiffs; it simply accelerates their already existing right to appeal and is thus procedural.

Furthermore, allowing defendants to appeal immediately the district court's denial of their motion to compel arbitration is in harmony with our policy of promoting arbitration when the parties have agreed to settle their disputes through that mechanism. *See Lindon City v. Engineers Construction Co.*, 636 P.2d 1070, 1073 (Utah 1981).

Docutel also asserts that the Utah Arbitration Act conflicts with the Federal Arbitration Act, 9 U.S.C.S. §§ 1–14 (1978), and is preempted by it. In support of this contention, Docutel argues that the fraud sections of the Utah and the federal legislation are not harmonious. This case, however, presents no issue requiring us to examine the fraud provision of either act; therefore, we do not need to consider the preemption issue at this time. Indeed, we do not even know if the Utah district court ruled pursuant to the Utah Arbitration Act or the Federal Arbitration Act because the order does not specify on which Act the district court relied. *See* 9 U.S.C.S. § 3 (1978) (providing for stays of litigation); *Moses H. Cone Memorial Hospital v. Mercury Construction Corp.*, 460 U.S. 1, 26, 103 S.Ct. 927, 942, 74 L.Ed.2d 765 (1982) (state courts are obliged to grant stays under 9 U.S.C.S. § 3).

Docutel further contends that the new Utah Arbitration Act conflicts with the Federal Arbitration Act as interpreted by the federal trial judge. By this, Docutel means that the federal court judge ordered litigation of this dispute under one of Docutel's claims, while leaving open for decision the question of whether separate credit agreements existed under two of the other claims. Nowhere does the Federal Arbitration Act authorize federal district courts to

compel state courts to accept litigation which is determined by the state courts to be subject to arbitration. 9 U.S.C.S. §§ 1–14 (1978).[5] Therefore, we are not bound by the federal trial court's disposition of the first, second, and fourth causes of action.

■ Thus, we treat the issue central to this appeal: did the Utah district court err in interpreting the contract as not requiring arbitration of Docutel's collection claim.[6] This issue is one of law, and we are not required to defer to the trial judge's interpretation. *Jones v. Hinkle*, 611 P.2d 733, 735 (Utah 1980).

The contract drafted by Docutel is not a model of clarity. Paragraph 10 of the agreement apparently provides for litigation of claims arising under credit agreements. Paragraph 12, however, states: "All disputes arising under this Agreement or pertaining in any manner to the dealership created by this Agreement shall be resolved by arbitration by an Appeal Board...." Docutel has not presented evidence of any credit agreement; rather, it relies on a broad assertion that the money it seeks from defendants is due under the terms of the dealership agreement and therefore under a "security interest" created by paragraph 10. However, the agreement provides only for litigation of claims arising out of credit agreements. The dealership agreement itself contains no provisions granting credit to defendants; therefore, we hold that Docutel has failed to bring its claim within paragraph 10 of the agreement.

■ Further, assuming *arguendo* that Docutel's claim is properly within paragraph 10, we would nevertheless resolve a conflict between paragraph 10 and the arbitration clause of paragraph 12 in favor of the latter. Docutel drafted the agreement, and we interpret ambiguities in it against the drafter. *Park Enterprises v. New Century Realty*, 652 P.2d 918, 920 (Utah 1982). This principle of interpretation is particularly appropriate when, as here, the ambiguity could have easily been avoided. If Docutel had intended to exclude any provision from the arbitration clause, it could have done so simply by adding the phrase "except as provided in paragraph 10" to the arbitration clause.

It is our policy to interpret arbitration clauses in a manner that favors arbitration. In *Lindon City v. Engineers Construction Co.*, we stated:

> [Arbitration] is a remedy freely bargained for by the parties, and "provides a means of giving effect to the intention of the parties, easing court congestion, and providing a method more expeditious and less expensive for the resolution of disputes
>
> ....
>
> Arbitration clauses should be liberally interpreted when the issue contested is the scope of the clause. If the scope of an arbitration clause is debatable or reasonably in doubt, the clause should be construed in favor of arbitration....

636 P.2d at 1073 (quoting *King County v. Boeing Co.*, 18 Wash.App. 595, 602–03, 570 P.2d 713, 717 (1977)).

Our interpretation of the contract in favor of arbitration is therefore in keeping with our policy of encouraging extrajudicial resolution of disputes when the parties have agreed not to litigate. This policy is shared by the federal courts. *Stateside*

---

5. The federal trial court had no authority to order the state court to accept such litigation. 9 U.S.C.S. § 3 (1978) grants state *and* federal trial judges the power to stay proceedings in their courts and to order arbitration of arbitrable issues. 460 U.S. at 26, 103 S.Ct. at 942. 9 U.S.C.S. § 4 (1978) empowers United States district courts, under certain circumstances, to issue orders directing parties who have agreed to arbitrate to proceed to arbitration. However, if there is an issue as to whether an agreement to arbitrate an issue was made, "the court shall proceed summarily to trial thereof." A jury trial of the issue is available under some circumstances. If the jury determines that no agreement was made, "the proceeding shall be dismissed."

6. In its complaint, plaintiff alleges that both Richard Brady and Dick Brady Systems, Inc., should be considered signatories of the dealership agreement. We will treat them as such.

*Machinery Co. v. Alperin,* 591 F.2d 234, 240 (3d Cir.1979); 9 U.S.C.S. § 4 (1978). The decision of the district court is reversed, and the parties are ordered to arbitrate all claims pursuant to the terms of the agreement. Costs to defendants.

HALL, C.J., and STEWART and ZIMMERMAN, JJ., concur.

HOWE, Justice: (concurring and dissenting).

I concur in that part of the Court's opinion which holds that we have jurisdiction of this appeal. However, I dissent from that part holding that the trial court erred in interpreting the contract as not requiring arbitration of plaintiff's collection claim.

The majority opinion gives no legal effect whatever to paragraph 10 of the parties' agreement. I believe that the following principle of contract interpretation found in the Restatement (Second) of Contracts § 203(c) is applicable: "Specific terms and exact terms are given greater weight than general language." In paragraph 10 of their agreement, the parties specifically provided that in the event of default by the dealer under any credit agreement with Olivetti, the latter may bring legal action for collection of an unpaid account and may avail itself of any remedy, including those contained in the Uniform Commercial Code. The dealer agrees to pay reasonable collection costs and legal expenses, including reasonable attorney fees. These provisions smack of court action, not arbitration.

The trial court and the U.S. District Court for the District of Utah properly interpreted paragraph 10 as not requiring arbitration of any dispute arising out of a credit agreement between the parties. Both courts concluded that the plaintiff's first, second, and fourth causes of action could be maintained in court. I agree with that conclusion since they appear to arise from the extension of credit by the plaintiff to the defendants. The majority opinion argues that "Docutel has not presented evidence of any credit agreement." That, of course, is literally true since this case

has not proceeded past the pleading stage. No discovery has been conducted. However, a cursory survey of the pleadings indicates that the first, second, and fourth causes of action seek to recover money from the defendants for goods sold and delivered to them by the plaintiff under an extension of credit. This showing certainly is sufficient to get the plaintiff past a dismissal of its suit at this juncture and put the plaintiff to its proof at trial.

The majority in footnote 3 expresses concern that inconsistent results might come from court action and arbitration. That will not occur since the third cause of action, which will be arbitrated, alleges that Dick Brady Systems, Inc. is the alter ego of Richard Brady. If the plaintiff prevails on this third cause of action, Richard Brady will be personally liable for such debts of Dick Brady Systems, Inc. as may be found due and owing by the Court on the other causes of action. This would produce no inconsistent result.

I would affirm the judgment below.