[No. 33370. Department Two. January 19, 1956.]

WILLARD J. JONES et al., *Respondents*, v. EDNA M. DEXTER et al., *Appellants*.[1]

*John H. Caley* and *Henderson, Carnahan, Thompson & Gordon* (*Harry Sager*, of counsel), for appellants.

*Otis A. Hallett* and *J. Peter P. Healy*, for respondents.

[1]Reported in 292 P. (2d) 369.

HILL, J.—The decisive question in this case is whether the lessees gave the lessors a legally binding notice of their election to extend a service station lease for a five-year period.

By the terms of the lease, the lessees paid a rental of one-half cent a gallon on all gasoline sold by them, with a minimum of one hundred dollars and a maximum of two hundred dollars a month. It was a five-year lease expiring July 1, 1954, and containing the following renewal proviso:

"The lessee [appellants had succeeded to the interest of the original lessee] may at his option extend this lease for an additional five-year period by notifying the Lessors [respondents had succeeded to the interest of the original lessors] of such election on or prior to thirty (30) days before expiration of this lease."

It will be noted that the election did not have to be in writing or at any specific time, except that it could not be later than thirty days before the expiration of the lease.

What is claimed to have been a legally binding notice of election to renew the lease, was given orally in January or February of 1953 (some sixteen to eighteen months before the expiration of the lease) during the course of negotiations for a new lease with a considerably extended term, a third party either to take over the interest of the then lessees (appellants here) and become the sole lessee or to be one of the lessees. In the course of negotiations, Willard J. Jones, one of the lessors, stated that if the lessors were to give a longer term it should be at an increased rental, effective immediately. The language relied upon as a legally binding election was used by Lewis S. Armstrong, one of the lessees, in response to the lessors' insistence upon an increased rental, and, as found by the trial court, was as follows:

" 'It is obvious that we are not going to be able to get together on a new lease at this time for an extended term. Inasmuch as you have made it obvious that what you want is an increased rental rate at the present time when we still have approximately six and one-half years to go on our present lease and option, under the circumstances Edna

[his partner, the widow of the original lessee] and I will continue for the balance of the term of our lease and option, and when we are nearing the end of that six and one-half years we will talk to you about renewing the lease at that time.' "

There were further negotiations on at least one occasion between Willard Jones and the third party, but Armstrong was not present. No other notice, written or oral, was given informing the lessors of the exercise of the option for the extension contained in the lease. The lessees remained in possession after the expiration of the first five-year term on July 1, 1954; and the lessors, claiming that no notice had been given, brought this action to oust the lessees and to recover possession of the premises. From a judgment in favor of the lessors awarding them possession of the premises and damages for the retention of the premises for any period after July 31, 1954, the lessees appeal.

The trial judge, in his memorandum opinion, said:

"The court is of the opinion that the statement made by Mr. Armstrong during this period, sixteen or eighteen months before the expiration date and during the negotiations for a sale, was not an unequivocal statement. It was not such a plain, clear, and certain statement of intention to exercise the option as to comply with the rule. In the court's opinion, a lessor hearing exactly this statement during the course of a discussion could hardly be said to be put on notice that the lessee was intending at that time and by that statement to give notice of the exercise of an option. It could just as well have been construed as an argument in favor of a better deal. Putting this matter another way, and granting that the lessor could prove that such a statement was made, could the lessor have held the lessees for a renewal under the lease at its expiration?"

The notice of election to take advantage of an option to extend or renew a lease must indicate a definite, unequivocal, and unqualified determination on the part of the lessee to exercise his option. *Carroll v. Latham* (1923), 61 Cal. App. 720, 215 Pac. 715; *Pope v. Goethe* (1935), 175 S. C. 394, 179 S. E. 319, 99 A. L. R. 1005; *Warthen v. Lamas* (1945), 43 A. (2d) (App. D. C.) 759; *Raleigh Associates v. Jackson* (1950), 96 N. Y. S. (2d) 528. See, also 3 Thompson

on Real Property (Perm. ed., Rev.) 371, § 1266. (The distinction between an extension and a renewal of a lease, to which reference is made in many of the cases, is not here material.)

The language here relied upon as notice, if used on an occasion when the extension of the existing lease was the subject-matter of discussion, might well have been the definite, unequivocal, and unqualified notice to which the lessors were entitled; but, as the trial judge indicates, under the circumstances of this case, it could have been construed by the lessors "as an argument in favor of a better deal" on the new lease then under consideration. In *Carroll v. Latham, supra,* there had been negotiations, under somewhat similar circumstances, for approval of an assignment by the lessees and an extension on behalf of their proposed assignees. This approval was refused. The evidence as to whether the lessees gave notice of their election to exercise their option for an extension was complicated by intermixture with the evidence relating to the other negotiations. The trial court made a finding that the lessees had not given notice of their intention to exercise the option for an extension and the California court of appeals affirmed.

■ The notice of election must be as binding on the lessee as on the lessor, and must be in such terms that the lessee cannot escape liability should he subsequently decide not to keep the premises for the extended term. *Orr v. Doubleday, Page & Co.* (1918), 223 N. Y. 334, 119 N. E. 552, 1 A. L. R. 338; *Spillman v. Interstate Public Service Co.* (1940), 216 Ind. 343, 24 N. E. (2d) 693; *Le Blanc v. Barielle* (1946), 25 So. (2d) (La. App.) 638, 641; *Sellars v. Harvey* (1946), 11 Alaska 100, 111. If the shoe were now on the other foot and the lessees had changed their minds and did not want the lease extension (and the lessors were trying to use the statement which we have quoted, made at the time and under the conditions noted, as the basis for holding the lessees responsible for the rent during the extended period), the lessees would be saying—and we think justifiably —that they had a right to change their minds and that, under the circumstances in which it was made, that state-

ment was not such a definite, unequivocal, and unqualified election to exercise their option as would bind them for the payment of rent for the extended term. Unless a notice of election is binding upon the lessee, it is not binding upon the lessor. Both must be held or both absolved. *Sellars v. Harvey, supra; Warthen v. Lamas, supra.*

In line with the previously quoted portion of his memorandum opinion, the trial judge made the following finding of fact:

"The court further finds that the statement made by defendant [appellant] Armstrong during this period, sixteen or eighteen months before the expiration date and during the negotiations for a sale, was not an unequivocal statement. It was not such a plain, clear and certain statement of intention to exercise the option as to comply with the rule. A lessor hearing exactly this statement during the course of a discussion could hardly be said to be put on notice that the lessee was intending at that time and by that statement to give notice of the exercise of an option. The lessor could not have held the lessees for renewal of the lease at its expiration by reason of this statement alone."

While this finding of fact is actually, for the most part, a conclusion of law, it, together with the quotation from the memorandum opinion, quite adequately states our own conclusions, with this factual reservation: The negotiations "for a sale" to which the judge refers, had been blocked by the fact that none of the lessors wanted to sell, and at the time the quoted statement was made the negotiations were actually for a new and longer lease.

■ We hold that, under the circumstances in which it was made, the statement relied upon by the lessees cannot be said to have put the lessors on notice that the lessees were at that time and by those words giving definite, unequivocal, and unqualified notice of their election to extend the existing lease for an additional five years.

■ The lessees contend that, even if they gave no notice of election, the equities in their favor are such that they are entitled to relief against the consequences of their failure to give such notice, particularly since they would lose eighty-five hundred dollars in underground improvements

which they had installed. We are in entire accord with the finding of the trial court that the lessees, during the five-year term of the lease, paid an extremely low rental for the premises, "not to exceed one-half of the reasonable rental value thereof, and that there are no equities in favor of the defendants."

The judgment is affirmed.

HAMLEY, C. J., MALLERY, WEAVER, and OTT, JJ., concur.