[No. 3393–7–III.   Division Three.   July 1, 1980.]

DONALD P. SMITH, ET AL, *Appellants,* v. WILLIAM M. HAMILTON, ET AL, *Respondents.*

*Jerry J. Moberg* and *Ries & Kenison,* for appellants.

*Robert Waitt,* for respondents.

McInturff, J.—Donald P. and Gail L. Smith appeal from a judgment dismissing a claim against their former attorney, William M. Hamilton, for legal malpractice in the exercise of a real estate purchase option.

Because the trial judge died before the entry of formal findings of fact and conclusions of law, the parties stipulated that the memorandum opinion of the court be used in their stead. To the extent the memorandum is unchallenged, it establishes the following facts. The Smiths, as lessees, entered into a lease of Douglas County orchard property from lessors, Leland D. and DeLaine Kennedy and Leo Kiehn. The lease contained an option to purchase the property during the term of the lease (May 27, 1970 to November 1, 1974), and that provision read:

> Lessors, as a part of the consideration for this lease, hereby give to the Lessees the privilege of purchasing at any time within the lease period after notice to the Lessors the described property for a total purchase price of $30,000.00, which price shall include the equipment described herein. The purchase price shall be payable $6,000.00 or more down, with 50% or more of the net crop payments as defined herein, and which 50% of the net crop payments includes interest at the rate of 7% on the declining balance.

In June 1974, Mr. Smith advised Mr. Hamilton that he wished to exercise the purchase option and would be in a position to raise the necessary down payment. On August 26, 1974, only Mr. Smith signed a note prepared by his attorney, addressed to the lessors and which provided:

> I am writing you pursuant to the terms of that certain Orchard Lease with Option to Purchase agreement dated June 12, 1970, providing for the purchase of the following described property, to–wit: [legally described property]
> You are hereby notified that I am exercising my option to purchase pursuant to Paragraph 6, of page 2, of said lease agreement, providing for a total purchase price of $30,000.00, and I tender herewith the down payment

pursuant to the terms of that said lease agreement, which purchase shall be perfected as of October 31, 1974.

Mr. Smith asked Mr. Hamilton if his wife should also sign, and he replied it was not necessary. The attorney's trust account check for $6,000 was tendered with the notice. The court found the $6,000 came from Smiths' community funds and that the attorney's actions were taken with the full knowledge and approval of Mrs. Smith.

Through their attorney, the lessors notified Mr. Hamilton that they were rejecting this tender, referring to certain problems in accounting and the indefiniteness of the terms of the option. Mr. Hamilton then prepared a proposed form of a real estate contract with blank signature lines for all the parties, including Mrs. Smith, and providing for a minimum annual payment of $2,000, in an attempt to meet the objection concerning indefiniteness. The proposed contract was delivered to the lessors' attorney about a week before the option would have expired. The contract named Mr. and Mrs. Smith as husband and wife and as the proposed purchasers.

On January 7, 1975, the lessors' attorney advised Mr. Hamilton he had discussed the proposed contract with his clients and they did not wish to enter into such an agreement at that time "because of the problems of merger with any claim they might have for rent due for the years of 1971, 1972 and 1974". Mr. Hamilton also was told that before the purchase option could be reduced to any sort of an agreement, a proper accounting was required. Within a few months, the problems regarding the accounting resulted in a lawsuit in which the lessors raised for the first time the adequacy of the notice of intention to exercise the option. After a trial, the court found the option had not been validly exercised for the failure of Mrs. Smith to sign the option and that title should be quieted in the lessors. Mr. Hamilton advised the Smiths that he believed the court had erred and he was confident the court's decision could be reversed on appeal. However, the Smiths decided, for business reasons, not to appeal.

Then, on February 16, 1977, the Smiths brought this action against their attorney alleging the intention to exercise the option to purchase had been improperly drawn, and, as a result, the Smiths were denied their option to purchase the orchard property. They contended they lost not only the benefit of their bargain to purchase but had also lost improvements they had expended on the property with the anticipation of purchasing it at a later date. They also complained of loss of income and profit that would have been theirs had they been able to purchase the property.

The court dismissed the action, finding the purchase option had been effectively exercised by Mr. Smith's letter to the lessors, coupled with the later submitted proposed real estate contract naming Mr. and Mrs. Smith as purchasers. The court found that although Mr. Smith was the only person to sign the initial correspondence between the lessees and lessors, there was sufficient evidence of acceptance, ratification or approval by Mrs. Smith to bind the community on the option.

The Smiths challenge the court's findings regarding the community nature of the notice of intent to exercise the option and the conclusion Mr. Hamilton was not negligent in his actions on the Smiths' behalf. Relying solely on the ill–fated August 26, 1974 letter by Mr. Smith as the only attempt to exercise the purchase option, the Smiths argue it did not bind both optionees as required by *Jones v. Dexter,* 48 Wn.2d 224, 292 P.2d 369, 51 A.L.R.2d 1399 (1956), and was not signed by both the husband and wife as required by RCW 26.16.030(4).[1]

However, Mr. Smith's letter is not the only way in which the couple advised the lessors of their intention to exercise the option. Delivery of the proposed real estate

---

[1]RCW 26.16.030(4) provides:

"Neither spouse shall purchase or contract to purchase community real property without the other spouse joining in the transaction of purchase or in the execution of the contract to purchase."

contract naming the Smiths as husband and wife and as prospective purchasers under the lease option was a sufficient exercise in itself. *See Duprey v. Donahoe,* 52 Wn.2d 129, 133–34, 323 P.2d 903 (1958), where the court said:

> In the absence of any provision in the option contract with reference to the manner by which an option can be exercised, it is the general rule that any manifestation, either oral or written, indicating an acceptance on the part of the optionee is sufficient.

*See also Spake v. Elder,* 1 Wn. App. 116, 122, 459 P.2d 820 (1969). *Cf. Ban–Co Inv. Co. v. Loveless,* 22 Wn. App. 122, 587 P.2d 567 (1978).

Since as a matter of law the contract option had been validly exercised, the judgment of the Superior Court is affirmed.

GREEN, C.J., concurs.

ROE, J. (dissenting)—I dissent. Under *Pixton v. Silva,* 13 Wn. App. 205, 534 P.2d 135 (1975), it is clear that, for an option to be exercised by optionees husband and wife, both should sign the instrument exercising the option. Defendant attorney in this case had only the husband sign. A prudent lawyer would not have so acted and failure to follow the law was negligence. Even the clients suggested that both should sign, but defendant ignored that good lay advice.

Although it is true that it may have been possible in this case for the husband and wife by litigation to enforce the exercise of the option because of subsequent activities, nevertheless, this extra effort and perilous position was caused by defendant attorney.

When the trial judge dismissed the first action based on the attorney's failure to have the wife sign, that established a prima facie case of actionable negligence against the attorney whose duty it was to draw proper instruments for his clients. Presumably, that judgment, from which no appeal was taken, was and remains correct. The attempt at

readjudication by a subsequent trial judge of the judgment of the prior judge is not legally binding and cannot affect that prior judgment. I do not believe that the attorney should be excused for a possibly erroneous ruling of the first trial because he offered to appeal that decision without charge. He did not offer to pay the cost of the verbatim report or other expenses incident to the appeal. If the attorney had acted according to established case law, plaintiffs would never have been put in a position of having to decide to invest in an appeal. The clients may well have lost confidence in their then attorney's judgment since, because of it, they were in a difficult legal position which could have been easily avoided if only their own advice had been taken.

The simple fact is that if the defendant attorney had conducted his business as the law clearly indicates it should have been done, and as his clients, who were alerted to this situation, asked him to do, the judge at the first trial would not have ruled as he did. Under *Hansen v. Wightman,* 14 Wn. App. 78, 538 P.2d 1238 (1975), I would hold that the negligence of the lawyer was the proximate cause of damage to the clients, and the judgment should be reversed.

Reconsideration denied August 11, 1980.

Review denied by Supreme Court October 24, 1980.