742 So.2d 139 (1999)
James R. MOORE and Jeanine Mah, Appellants,
v.
Patricia Gaines KRIEBEL, Ben M. Gaines, Jr. and Jodie Gaines Johnson, Appellees.
No. 97-CA-00098-COA.
Court of Appeals of Mississippi.
April 20, 1999.
*140 James R. Moore, Jr., Ridgeland, Barry Joe Walker, Tupelo, Glenn Gates Taylor, Ridgeland, Attorneys for Appellants.
C. Michael Malski, Amory, Attorney for Appellees.
*141 BEFORE THOMAS, P.J., LEE, AND SOUTHWICK, JJ.
SOUTHWICK, J., for the Court:
¶ 1. This is an appeal from a judgment of the Lee County Chancery Court granting relief from forfeiture of a commercial lease for nonpayment of taxes. There are five issues: 1) was notice demanding payment of taxes actually intended as notice; 2) was notice technically sufficient; 3) were lessees entitled to equitable relief from forfeiture; 4) was reliance on the advice of counsel a good faith mistake; and 5) are other equitable doctrines applicable? We find no error and affirm.

FACTS
¶ 2. The lessors sought termination of a lease for nonpayment of property taxes. The lease in issue was executed in 1972 for a 35-year term by Joseph Henry Moore and his wife Ophelia, both of whom are deceased. The plaintiffs Jeanine Mah and James Moore, Sr., are the successors to the original lessors. The defendants' interest was acquired in 1979 and 1981 by Ben Gaines, Sr., who in 1992 assigned his interest as lessee to his three adult children. Those children are the defendants Patricia Gaines Kreibel, Ben M. Gaines, Jr., and Jodie Gaines Johnson. The lessees for convenience are called the Gaineses. The property is a shopping center named Food World Plaza. Sublessees include a bank, grocery store, drug store, a nightclub, and other businesses.
¶ 3. The reason for nonpayment of taxes was that the Gaineses were attempting to pressure sublessees who operated a nightclub to vacate the property. Those sublessees were Walter E. Catledge and Terry D. Catledge. Noise and other disturbances from the Catledge's nightclub caused the Gaineses to receive complaints from other tenants. A suit was filed by the Gaineses against the nightclub in 1993 for constituting a nuisance, and also alleging nonpayment of rent and taxes.
¶ 4. There were four separate parcels for tax purposes. Taxes on three parcels were paid but were withheld on the nightclub parcel. When the taxes became delinquent, the lessor's CPA, Christopher Hutchinson, sent a written request for the payment to Ms. Kreibel on December 15, 1993. A second request was made to Ms. Kreibel in a letter dated July, 26, 1994. Hutchinson stated Kreibel called him on August 18, 1994, and explained why the taxes had not been paid. Hutchinson stated that, although he sympathized, the taxes needed to be paid. He further testified that Kreibel requested a strongly worded letter about this situation in order to help put pressure on the Catledges. Hutchinson said he could not do this and referred Ms. Kreibel to attorney David Butts. There was no definite commitment by Butts to comply, but by letter sent to Kreibel and dated September 1, 1994, Butts demanded payment and threatened default should payment not occur. This letter is a major issue in this litigation as it was evidence that the landlord had in fact demanded payment of the taxes. To the Gaineses it is only evidence that Butts, on behalf of the lessors, was assisting in pressuring the nightclub to depart.
¶ 5. The Gaineses' attorney, T.R. Trout, called Butts after Kreibel sent him a copy of this letter. He informed Butts that the Gaineses wished to put off paying the taxes in order to exert pressure on the Catledges. Trout testified that Butts told him the taxes had to be paid. Trout also said that Butts left him with the impression that payment was not urgent. Trout believed that he later called Kreibel and discussed the situation but did not believe he had told her the matter was urgent. Kreibel could not recall the conversation one way or the other. By letter of September 6, 1994, Hutchinson again gave notice to Kreibel that the back taxes needed to be paid.
¶ 6. The taxes still were not paid and the land was sold at a tax sale on August 29, 1994. The plaintiffs-lessors redeemed the *142 land on September 20, 1994, paying the back taxes, interest and penalties totaling $7,692.89. They then instituted an action to have the lease canceled for nonpayment of taxes. A settlement was reached with James Moore, Sr., and he is not a party to this appeal. The chancellor ultimately held that for equitable reasons, the Gaineses had not forfeited their interests under the lease.

DISCUSSION

Issue 1: Was clear and effective notice ever sent?
¶ 7. The chancellor found that, under the circumstances, it was reasonable for Kreibel to conclude that the letter of September 1, 1994, did not represent a genuine manifestation of intent by the landlord to demand payment of the back taxes. The effort to force the nightclub out is at the center of that conclusion:
(1) [Kreibel] had asked the Moore accountant for it, (2) she had spoken to the Moore estate attorney the day before the letter was sent, (3) no complaint had been made about the taxes not being paid until July 26, 1994, and (4) perhaps, most telling, the letter itself demanded that "these taxes be paid prior to September 15, 1994, in order to avoid sale of the leased property by the tax collector of Lee County."
¶ 8. Moreover, since the land had already been sold for delinquent taxes on August 29, 1994, the chancellor concluded that the only logical reason for the letter was to assist the Gaineses in their litigation against the Catledges.
¶ 9. Mah counters that the notice was not misleading. Kreibel testified that her only reason for not paying the taxes was the legal advice of Trout, not that she believed that the demand from the lessors was a pretense. Butts and Hutchinson testified they had not given Kreibel or Trout any reason to believe that the taxes need not be paid. By this Mah argues that neither Butts nor Hutchinson could be seen as acquiescing in the plan to pressure the Catledges.
¶ 10. The supreme court has held that in reviewing a chancellor's decision, "the Court will not disturb the factual findings of a chancellor when supported by substantial evidence unless the Court can say with reasonable certainty that the chancellor abused his discretion, was manifestly wrong, clearly erroneous or applied an erroneous legal standard." Cummings v. Benderman, 681 So.2d 97, 100 (Miss.1996). There is evidence from the communications between Kreibel, Hutchinson, and Butts, to support a conclusion that Kreibel reasonably assumed that the letter of September 1, 1994 was the strongly worded letter that she had requested. This finding is not against the overwhelming weight of the evidence.
¶ 11. The effect of that assumption being reasonable is addressed in the third issue.

Issue 2: Compliance of the notice with lease and legal requirements.
¶ 12. The chancellor found that in various ways the notice failed to satisfy the terms of the lease for declaring the lease in default. Lease section number 23 provides that if the lease is breached, "then the Landlord, at its election, may terminate this lease upon five (5) days written notice to the tenant to such effect, and unless Tenant shall have cured the default complained of within said five-day period, this lease shall be deemed terminated upon the expiration of said five-day period...." The chancellor found that the notice was defective because it was sent by the landlord's attorney and not the landlord, did not state the exact amount of taxes due, and despite that the letter said a forfeiture would be declared if the taxes were left unpaid, no formal forfeiture was ever declared.
¶ 13. However, because we find that it is irrelevant whether the notice satisfied the technical requirements for declaring the lease terminated, we do not discuss the arguments under this issue. Even if the *143 notice were sufficient technically, a forfeiture still validly was denied.

Issue 3: Propriety of equitable relief in the absence of fault on the part of the lessor.
¶ 14. Relief from forfeiture is said both to be "favored" and to be permitted on only slight grounds. However, such language does not mean that relief is automatic. The parties disagree as to whether the person who is attempting to avoid forfeiture must prove that the other party contributed to the default. Both parties discuss at some length language regarding this and other issues from a supreme court decision addressing grounds for forfeiture of a lease. Koch v. H & S Development Co., 249 Miss. 590, 163 So.2d 710 (1964). We agree that Koch is central to the analysis. Phrases from that opinion can be found to support each viewpoint regarding the necessary role of the lessor before a forfeiture can be avoided. In it can be found this:
The rule is well recognized that equity will not relieve against a forfeiture in case of default of performance due to inadvertence, neglect or ignorance to which lessor in no way contributed.
Id., 163 So.2d at 727-28. The same paragraph refers to other rules, then concludes with this:
Equity will not relieve against mere forgetfulness and will not intervene where there is no fraud, accident or mistake on account of which the lessee neglected to avail himself of the option [to renew a lease].
Id. at 728. Though "fraud" would be that of the lessor (a lessee would not receive relief from his own fraud), should the reference to "accident or mistake" be limited to mistakes by the lessor, or does it more reasonably mean mistakes by the lessee?
¶ 15. Koch, in fact, may have too many statements of the guiding principles. Part of the reason for so many iterations of what is required to avoid forfeiture is that the principal authorities for the rules are legal encyclopedia and annotations. Id. at 724, 728. By their very nature, such sources collect concepts from a variety of jurisdictions and list them with supporting citations. The concepts often are not consistent. We examine Koch with some care in order to discern its central holding.
¶ 16. We first note that, though the facts of Koch concern lease renewals, the opinion does not limit its analysis to renewals. Much of Koch's language is generic, for example, that the "owner or lessor of property, when he contracts with a buyer or a lessee, should be able to rely upon the simple, mutually accepted terms of the contract, as should the buyer and lessee. The terms of the contract when fulfilled or breached should decide if possible the rights of the parties." Id. at 727. Whether the precise terms of this lease are to govern is the answer for which we search Koch.
¶ 17. The most direct effort in Koch to state a central set of rules starts by referring to the lessee's argument that there were two situations in which failure to give notice of the desire to renew a lease would not result in a forfeiture. The court appears to agree that the lessee is correct:
[Koch] urges that there are two exceptions when the renewal clause of a lease need not be strictly complied with to prevent a forfeiture, namely, (I) Waiver, which has already been considered here, and (II) where the lessee is entitled to and can obtain relief from his failure to give the notice required by the renewal provisions, (1) where by reason of compelling circumstances the failure to give notice results not from lessee's own ignorance or negligence, but (2) from accident, fraud, surprise, or mistake; (3) and the forfeiture will result in a real hardship to lessee, (4) but will do little or no harm to the lessor. 32 Am.Jur., Landlord and Tenant, Sec. 981.
The appellant, in order to be entitled to equity's protection, must fall within the positive and negative provisions of one or more of the above four exceptions. *144 At the outset there is no specific formula or prescription whereby the rights of lessor and lessee can be scientifically determined. The facts, circumstances and relationship of the parties in the particular case must be evaluated in order to decide this frequently confounding question.
Koch, 163 So.2d at 724 (emphasis in original).
¶ 18. An immediate uncertainty is the difference between the requirement in II(1) that the lessee's ignorance or negligence not be the cause for the default, and the factors in II(2) which permit relief when accident, fraud, surprise, or mistake has occurred. For example, what is the distinction between the negligence that does not avoid forfeiture and the accident or mistake which does?
¶ 19. The answer may arise from the next paragraph of Koch, which states that there is no relief if the default occurs because of "gross or wilful neglect" or "wilful ignorance." Id. Thus "mere negligence" may excuse performance, but a conscious, wilful or perhaps reckless effort to avoid knowledge of an obligation would not. As will be seen, though, forgetfulness is not mere negligence.
¶ 20. What the court specifically rejected was the rule announced in a Connecticut case:
[The Connecticut court] extends the doctrine of equitable relief against failure to give notice of lease renewal to cover neglect, provided it is not gross or wilful, and provided the delay is slight in fulfilling a condition precedent, where the lessor's loss is small and where such hardship would result to the lessee as to make it unconscionable.
Id. at 725, discussing F.B. Fountain Co. v. Stein, 97 Conn. 619, 118 A. 47 (1922). The first indication that the writer of the Koch opinion, Justice Tom Brady, is not enamored of the Fountain opinion is when he states that the Connecticut "court indulges in a great deal of dicta...." Id. Even more importantly, at the end of the Koch opinion appears this comment:
The extended, lenient rule found to be "better" by the court of the State of Connecticut does not particularly appeal to us as being desirable. We feel that the better reasoned authority can be found in the Scott-Burr Stores Corp. v. Wilcox, [194 F.2d 989 (5th Cir.1952)]; Dikeman v. Sunday Creek Coal Co., [184 Ill. 546, 56 N.E. 864 (Ill.1900)]; Braun v. Leo G. MacLaughlin Co.[ 93 Cal.App. 116, 269 P. 191 (Cal.App. 1928)]; and Jones v. Dexter, [48 Wash.2d 224, 292 P.2d 369 (Wash. 1956)], together with the other authorities cited herein.
No court has the munificent right, though exercised earnestly, to cancel and hold for naught the solemn contractual responsibilities of the parties to a contract, simply because a failure to comply with the terms thereof, or a breach by one of the parties of an agreed prerequisite, results in substantial loss or damage to the person violating the contract, unless there is ambiguity which requires it or unless laches, estoppel, or some other equitable factor permits a reinterpretation or modification of it.
Id. at 729. The precise "better" rule in Fountain that is rejected is this:
We think the better rule to be that, in cases of willful or gross negligence in failing to fulfill a condition precedent of a lease, equity will never relieve. But in cases of mere neglect in fulfilling a condition precedent of a lease, which do not fall within accident or mistake, equity will relieve when the delay has been slight, the loss to the lessor small, and when not to grant relief would result in such hardship to the tenant as to make it unconscionable to enforce literally the condition precedent of the lease.
Fountain, 118 A. at 50. So whatever the correct rule may be, the above quote is not it.
*145 ¶ 21. An examination of these four "better reasoned authorit[ies]" named in Koch does not lead to a great deal of clarity. The first-named case neither discussed nor applied any equitable factors, but held that failure to give timely notice of an intention to renew a lease caused the lease to expire; the argument "that such a judgment is harsh and inequitable" was rejected because "no grounds for equitable relief from the lapse" were argued. Scott-Burr Stores, 194 F.2d at 991.
¶ 22. Two other of the favored decisions did not apply equitable factors. One rejected an argument that the lease option language was vague and the actual renewal notice was defective. Braun, 269 P. at 193. The other refused to permit forfeiture when the notice of renewal was indefinite. Dexter, 292 P.2d at 372. The one equitable consideration that was addressed concerned the value of the improvements that the lessees would lose; the court stated that the rent had always been "extremely" low and that no equities favored the lessees. Id. Both cases are cited in Koch to support the statement that "[e]quity will not relieve against mere forgetfulness and will not intervene where there is no fraud, accident or mistake on account of which the lessee neglected to avail himself of the option." Koch, 163 So.2d at 728.
¶ 23. Only one of the "better reasoned authorit[ies]" cited in Koch examines the issues that are faced here. In Dikeman, notice of a renewal of a lease was to be sent by May 26. The lessee's employee who was to send the notice made a note in his office calendar to send the notice on a certain date, but unexpectedly was called away a few days before that date. By the time he returned, the date to send the notice had passed. Dikeman, 56 N.E. at 864-65. The court denied relief from forfeiture, saying that there "was no fraud, accident, or mistake on account of which complainant neglected to avail itself of the option, and it assigns no explanation or excuse for the delay except the negligence of its own agent. It lost its legal right by failing to comply with the condition precedent, and we do not see how equity can relieve against mere forgetfulness." Id. at 865.
¶ 24. Whatever else these four authorities mean, they deny relief from forfeiture because of forgetfulness or solely because of a resulting substantial monetary loss to the lessee. What we do not find is any broad or detailed statement of law. So despite the Koch court's pointing us to those authorities for the guiding principles, we are constrained to look elsewhere.
¶ 25. Earlier in the opinion, the court stated this:
The written words of the contract afford greater certainty of intention, and more accurate compliance with and performance of the terms of the contracts by the parties thereto than do the retrospective, impassive conclusions of a court of equity. A court of equity should not be the first, but the last resort. It is bound by a contract as the parties have made it and has no authority to substitute for it another and different agreement, and should afford relief only where obviously there is fraud, real hardship, oppression, mistake, unconscionable results, and the other grounds of righteousness, justice and morality.
Koch, 163 So.2d at 727. It is that language that a later opinion quoted approvingly. Columbus Hotel Co. v. Pierce, 629 So.2d 605, 608 (Miss.1993). This begs our question, though, as we seek a definition of the kind of mistake necessary before there is relief from forfeiture.
¶ 26. We still find the Koch court's phrase of "accident, fraud, surprise, or mistake" to be the key to unlock the result in our case. The authority cited in Koch for that language is the legal encyclopedia AMERICAN JURISPRUDENCE. Koch, 163 So.2d at 724 (citing 32 AM. JUR. Landlord and Tenant § 981 (1942)). An examination of that text reveals that the Fountain case, rejected in Koch, was its authority. 32 AM. *146 JUR. Landlord and Tenant § 981 at 824 n. 8.
¶ 27. Koch might also be explained by later supreme court opinions, but the court has cited it only once on the forfeiture issue:
The maxim, equity abhors a forfeiture, is recognized by Mississippi jurisprudence. It is wise to avoid forfeitures. And this doctrine may be applicable even where a contract mandated forfeiture. However, this doctrine generally applies in those situations where the alternative to forfeiture is an equitable remedy to the complaining party, i.e., the return to the position he would have been in had the breach not occurred. Where the damages cannot be calculated with reasonable precision, relief against forfeiture will not normally be given.
Columbus Hotel Co. v. Pierce, 629 So.2d 605, 609-10 (Miss.1993) (citations omitted). That could be read to state a rule that forfeiture will always be avoided if an equitable remedy exists to return the party who is seeking a forfeiture "to the position he would have been in had the breach not occurred." Whether so broad a rule is intended seems unlikely, as the elaborate discussion of the various principles in Koch was summarized and in no way criticized in Columbus Hotel. In fact, we find that what the more recent case adds to the analysis is that forfeiture will often need to be declared when the results of the default cannot be cured.
¶ 28. Though there is some overlap in what Koch seemed to approve and what it criticized, our interpretation ultimately is that the "accident, fraud, surprise, or mistake" that equity will excuse does not include "gross or wilful neglect," Koch, 163 So.2d at 724, nor does it include forgetfulness. Id. at 728. It would include the lessee's reasonable misunderstanding such as the court found occurred in this case, namely, whether the lessor was willing to permit the taxes to remain unpaid while the efforts to force out the disfavored tenant continued. That misunderstanding is not forgetfulness, not gross or wilful neglect, nor anything else other than accident or mistake. What Koch repudiated was a rule that gave relief from forfeiture due to "neglect" to comply with a condition precedent of the lease, even when that neglect was not accident or mistake. That rejected rule focused on whether "the delay has been slight, the loss to the lessor small, and when not to grant relief would result in such hardship to the tenant as to make it unconscionable to enforce literally the condition precedent of the lease." Fountain, 118 A. at 50 (cited in Koch, 163 So.2d at 729).
¶ 29. Our conclusion means that a lessee's mistake can relieve him from a forfeiture, and that the lessor need not have contributed to the mistake. Here, there is some evidence that the lessor unwittingly did contribute because of the letter from Hutchinson.

Issue 4: Equitable relief based on reliance on erroneous legal advice
¶ 30. The chancellor found that the failure to pay back taxes was not a wilful breach since it was good faith reliance on legal advice. Moreover, the default was fully cured and there was no reason to believe the Gaineses would not again be the good tenants they had historically been before this situation. The chancellor held that equity would allow relief from forfeiture where the mistake by the lessee was in good faith and where the landlord was made whole.
¶ 31. We need not examine this as a separate basis for relief from forfeiture. Misunderstanding the meaning of the demand letter from Hutchinson may have been an accident or mistake as permitted in Koch. Reliance on legal advice that has unexpected consequences may not be the same kind of accident or mistake, though we need not decide that question. We note that reliance on the advice of counsel is not a blanket shield protecting egregious violations of contractual obligations. See *147 Murphree v. Federal Ins. Co., 707 So.2d 523, 532 (Miss.1997).

Issue 5: Other equitable concerns.
¶ 32. The chancellor addressed other equitable considerations including the seriousness of the breach and any windfall that may have resulted. It was clear to the chancellor that a significant windfall would accrue to the landlord if forfeiture were allowed. The lessee had made over $1,000,000 worth of improvements to the leased property. He found both the lessor's windfall and the lessee's loss militated against granting a forfeiture. Mah argues that the size of a forfeiture does not prevent a forfeiture. Columbus Hotel v. Pierce, 629 So.2d 605 (Miss.1993) (allowing a forfeiture worth over $1,000,000 resulting from a lease violation).
¶ 33. The plaintiff argues that Columbus Hotel favors a forfeiture in the instant case. Columbus Hotel involved a failure to maintain adequate records of guests, thereby thwarting one of the lease terms that set the amount of payment to the lessor. Equitable relief from forfeiture is usually inappropriate when damages for the breach cannot be calculated. Id. at 609-10. Accurate calculation of damages is necessary in order to put the injured party back in a situation comparable to that they would have enjoyed but for the breach. Id. We have no Columbus Hotel-like problem that damages cannot be calculated. Thus what it adds to forfeiture analysis does not apply here.
¶ 34. The chancellor here also found that Columbus Hotel distinguished between unconscionability as a bar to contract enforcement and equity as a bar. Id. at 608. We note first that "courts of equity will not enforce an unconscionable contract." In re Will of Johnson, 351 So.2d 1339, 1341 (Miss.1977). Thus, while unconscionability would entitle an individual to equitable relief, equitable relief is not dependent upon unconscionability. There is nothing unconscionable about insisting on compliance with a lease requirement that taxes be paid, but that does not mean forfeiture automatically follows from a breach of that term.
¶ 35. The chancellor may have erred in finding that the plaintiffs had on at least two prior occasions tolerated late payments of the ad valorem taxes on the Catledge property, thereby waiving this ground for forfeiture. Vice v. Leigh, 670 So.2d 6 (Miss.1995) (finding lessor who acquiesced in a lessee's breach may not later use that same breach as grounds for termination). At oral argument we asked the parties to file with the Court any reference to the record that supported this finding. Neither party believed such evidence was in the record. Regardless, the other grounds that we have found adequate to grant relief from forfeiture make the possible error in this one of no importance.
¶ 36. THE JUDGMENT OF THE LEE COUNTY CHANCERY COURT IS AFFIRMED. COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANT.
McMILLIN, C.J., KING, P.J., BRIDGES, COLEMAN, DIAZ, IRVING, LEE, PAYNE, AND THOMAS, JJ., CONCUR.