McMILLIN, C.J.,
for the court.
¶ 1. Katherine Hudson, in her capacity as the executrix of the estate of James Allen Lambert, her deceased son, has appealed from a judgment of the Chancery Court of Tishomingo County denying any relief to the estate in a suit arising out of a contract and warranty deed executed by Lambert prior to his death. The complaint was filed against Dale Vandiver and his wife, Barbara Vandiver. Both Vandi-vers were parties to the contract in question and Barbara Vandiver was the grantee in the warranty deed. The complaint sought rescission of both instruments on the ground that Lambert lacked the requisite mental capacity to enter into a binding contract at the time the documents were executed. After Lambert’s death during the pendency of the suit, it was revived on behalf of his estate and tried on the merits. For reasons we will proceed to discuss, we conclude that it is necessary to reverse the present judgment and remand this matter for further proceedings.
I.
Facts
¶ 2. Lambert entered into a contract whereby he agreed to convey a certain tract of real property in Tishomingo County to the Vandivers. The contract gave Lambert a right to repurchase the property under certain conditions spelled out in the instrument. The contract is quite brief and its underlying purpose is not readily ascertainable from a reading of the instrument. It is possible, however, to reconstruct the objectives of the parties with some measure of certainty from other evidence in the record. The following narrative constitutes this Court’s best effort to reconstruct the true nature and purpose of the transaction from all available evidence before us in the record.
¶ 3. Lambert was in the process of constructing a house for himself on the parcel of real property. However, he had run out of available funds and was unable to obtain financing from a bank or other commercial lender to finish the building project. The Vandivers, who were involved to some extent in the building business and who also considered themselves friends with Lambert, agreed that they would take title to the property, obtain the required financing to complete the project from a local bank, and complete the home. The parties un *619 derstood that Lambert was to make payments to the Vandivers in an amount equal to the payments due from them to the bank and the contract provided that, upon repayment of the obligation in full, the Vandivers would reconvey title to the property to Lambert. Though the contract itself does not specify, it appears that the parties understood that Lambert would retain actual possession of the property during the loan repayment period unless he defaulted in his obligation.
¶4. After the house was completed, a dispute arose between Lambert and the Vandivers regarding the amount of money that Lambert would be required to repay in order to have the property reconveyed to him. The contract originally indicated that the agreed sum was $15,000. The contract reflects a pen and ink interlineation changing that figure to $30,000. That change bears the initials of both Vandivers but there is no written indication that Lambert ever approved that alteration. In fact, the validity of this purported amendment to the contract appears to have little significance since the Vandivers contend that subsequent oral agreements between them and Lambert concerning such things as (a) modifications in the specifications of the house, (b) the advancement from loan proceeds of money to pay several criminal fines owed by Lambert, and (c) the necessity to borrow additional funds to retire an existing mortgage debt against the property unknown to the Vandivers at time of contracting, had driven their financial stake in the property to a sum in excess of $43,000.
¶ 5. Lambert originally commenced the action seeking specific performance of the contract in its printed form; that is, he contended that he was entitled to a judgment directing the Vandivers to reconvey the property to him upon the tender by him of the originally stated sum of $15,000. However, after changing attorneys, Lambert obtained authority from the chancellor to file an amended complaint. That complaint stated on its face that “the Plaintiff now amends said original Contract [sic] in its entirety, deleting the prayer for specific performance, and substitutes herewith and in lieu thereof, this his Amended Complaint.” That amended complaint went on to allege as Lambert’s sole ground for relief the fact that he was not mentally capable of entering into a binding contract at the time of the execution of the contract and deed. On that basis, Lambert asked the chancellor to “set aside the Contract/Agreement and Warranty deed.... ”
¶ 6. As we have previously indicated, Lambert died before his case could be tried and the claim was revived by the official representative of his estate.
¶ 7. During the pendency of the suit, the Vandivers represented to the chancellor that the bank loan they had obtained pursuant to the contract had gone into default and that, without Lambert or his estate making the periodic payments contemplated by the contract, they did not have the financial resources to keep the loan current and avoid a foreclosure action. On that basis, the court granted to the Vandi-vers authority to sell the property on the condition that all proceeds in excess of the debt due to the bank would be escrowed pending the final resolution of the issues of this case. The record indicates that this sale netted in excess of $50,000 for the property.
¶ 8. At the trial of the case, Lambert’s estate called Lambert’s mother as the sole witness to testify live before the chancellor. She testified that Lambert had been receiving Social Security disability benefits based on “his mental problems” since approximately 1990 or 1991. She also testified he had been institutionalized at the East Mississippi State Hospital in 1990 or *620 1991, had been hospitalized in Corinth at some unspecified time, and had received counseling at the Timber Hills Regional Mental Health Center. She indicated that this medical treatment was due to the fact that Lambert “couldn’t function with life” and “couldn’t take care of himself.”
¶ 9. Also, without objection, Lambert’s deposition taken prior to his death was introduced as evidence on behalf of the plaintiff. Lambert testified to having bought the property in question some three and a half years earlier, and to certain transactions whereby he had sold the property to another person but then repurchased it. He testified to having borrowed money from Iuka Guaranty Bank to work on the house. He also testified to owning another house that had burned, and that he had used the insurance money from that house to pay on the construction of the house in question. He discussed to some extent his borrowing from the bank and how he had been unable to borrow additional funds because “I think I made a late payment for almost a year.” Little or no evidence was developed in the course of the deposition bearing on the issue of Lambert’s alleged mental incompetency.
¶ 10. The estate also sought to introduce as a part of its case in chief certain hospital records relating to Lambert’s alleged mental problems. The defense objected on the ground that the records had not been properly authenticated and constituted inadmissible hearsay. The records were accepted and marked for identification only with the chancellor indicating that he would reserve a ruling on ultimate admissibility as evidence at a later time. There is no indication in the record that the chancellor ever admitted the records into evidence, and, thus, they will not be considered by this Court in deciding this appeal.
¶ 11. The chancellor held that Lambert possessed the necessary mental capacity to contract and that the contract executed between the parties was enforceable according to its terms. He further found that. Lambert had defaulted under the terms of the contract prior to his death by failing to make the payments to the Vandi-vers as required under the contract. As a result, the chancellor held that the Vandi-vers had no obligation under the contract to reconvey the property to Lambert (or to his estate).
II.
Issues on Appeal
¶ 12. The estate perfected this appeal from the chancellor’s decision and purports to raise the following two issues:
A. Whether the trial court erred in permitting the introduction of parole evidence to vary the terms of the written contract, and
B. Whether the chancellor was manifestly in error in permitting the Vandivers to retain any sums from the proceeds of the sale of the house beyond the $15,000 mentioned in the contract in its original form.
¶ 13. The posture of the case as it now stands poses something of a dilemma for this Court. The only issue framed by the pleadings was whether Lambert possessed the necessary mental capacity to enter into a binding contract. There was a fairly substantial body of evidence presented at trial that related to this single issue. The judgment of the chancellor contains a finding that Lambert’s estate had failed in its burden to prove by clear and convincing evidence that Lambert lacked the requisite mental capacity to enter into the contract and execute the deed to the Vandivers. The estate, in this appeal, does not seek to have that determination set aside.
¶ 14. There was no request in either the amended complaint or in the Van-divers’ answer to that amended complaint *621 that the chancellor proceed further, in the event the capacity of Lambert to contract was upheld, to construe the various rights of the parties arising under the deed and the contract. Despite the fact that these issues were not raised in the pleadings, a review of the record reveals that a fair amount of evidence was developed at trial, without objection from either party, on the issue of the specific terms of the contract and what the competing rights of the parties were under that instrument. The chancellor’s decision extends substantially beyond the determination of Lambert’s mental capacity and adjudicates the rights of the parties under the contract. The only issues raised in this appeal, in fact, relate to the chancellor’s determination of those issues not presented in the pleadings.
¶ 15. Despite the fact that the issues raised by Lambert’s estate in this appeal do not relate to the sole issue presented by his complaint, the Vandivers make no objection before this Court to the chancellor having proceeded, apparently on his own volition, to determine issues not raised in the pleadings. Rather, their brief is nothing more than a response on the merits to the issues set out in the estate’s brief. In this situation, where neither party has challenged the authority of the chancellor to adjudicate matters not raised by the pleadings, we will proceed to consider the issues raised in the appeal on the merits under the theory that the issues have been tried by the consent of the parties within the meaning of Mississippi Rule of Civil Procedure 15(b). Accord Lahmann v. Hallmon, 722 So.2d 614, 619 (¶¶ 15-16) (Miss.1998).
III.
Evidence Varying the Terms of the Written Contract
¶ 16. Lambert’s estate complains that the chancellor erred in considering evidence varying the original terms of the contract that, according to its interpretation of the contract, would permit the estate to repurchase the property upon payment of the original indicated price of $15,000. Specifically, the estate argues that giving effect to the interlineation of $30,000 as the agreed upon repurchase price amounts to the impermissible use of parol evidence to vary the terms of a written contract. See, e.g., Godfrey, Bassett & Kuykendall Architects, Ltd. v. Huntington Lumber & Supply Co., Inc., 584 So.2d 1254, 1257 (Miss.1991).
¶ 17. Though the chancellor’s decision makes reference to the $30,000 figure as the amount owed under the contract, it does not appear that the variation in the amount played a pivotal role in the chancellor’s decision to deny relief to the estate. Rather, the chancellor found that Lambert had defaulted under another provision of the contract. That provision of the contract provided as follows:
It is fully understood by all parties to this Agreement that should James Allen Lambert fail to repay the amount borrowed by Purchasers to the Purchasers as each installment comes due, then Purchasers may be considered in rightful possession of the above described property subject to the claims of any proper lienholders and any credit or equity due to Seller from payments made by Seller to Purchasers in accordance with the terms of this Agreement.
¶ 18. There was a complete lack of evidence in the record as to what arrangements existed for periodic payments from Lambert to the Vandivers. Insofar as we can glean from the sketchy evidence on the issue, Lambert’s failure to pay anything (or possibly only a nominal sum) arose out of an unavailability of funds on his part *622 rather than as a part of a dispute over the amount actually due. Thus, on the present state of the evidence, it seems apparent that the chancellor’s finding of default on Lambert’s part would not depend to any extent on whether his total repayment obligation was $15,000 or $30,000 or, in fact, some other amount.
¶ 19. Thus, the chancellor’s decision to leave title to the property (or, more properly, the proceeds from the courLapproved sale of the property) in the Vandivers was based on a finding that Lambert had defaulted in making the repayments contemplated under the contract and that, as a result, “[t]he Vandivers were therefore under no obligation to reconvey the property and Barbara' Vandiver was the rightful owner thereof.”
¶ 20. The problem presented by this finding is that, based on our review of the record, we can discover no credible evidence showing what constituted the terms of repayment by the Vandivers to the bank (and, thus, Lambert’s parallel obligation to the Vandivers), nor was there any evidence showing that Lambert was made aware of the terms of his repayment obligation and afforded the opportunity to make those payments. The situation was further complicated by Lambert’s death, an event that rendered performance of the contract according to the original intentions of the parties impossible, since it is evident that the parties contemplated a somewhat extended repayment period for Lambert to meet his obligations under the contract.
¶ 21. It is a well-known maxim of equity that “equity abhors a forfeiture.” Moore v. Kriebel, 742 So.2d 139, 146(¶ 27) (Miss.Ct.App.1999). Yet, if Lambert’s default in repayment arose solely due to his death, then it would appear to work an unconscionable forfeiture to permit the Vandivers to declare a default under those circumstances and retain title to the entire balance of the sale proceeds from the property, especially since it would appear from the record that the sale price of the property substantially exceeded the amounts the Vandivers testified to having expended in completion of the project.
¶22. It appears relatively clear from our review of the testimony that what the parties actually envisioned was an arrangement whereby the Vandivers would provide financing for the completion of the improvements to Lambert’s property and they would become the contractors responsible for procuring the actual work. Under that arrangement, it seems at least likely that the amounts to be expended on the property included some measure of profit to the Vandivers for their efforts. It does not appear that the parties ever envisioned Lambert surrendering possession of the property, since it was apparently within the contemplation of the parties that he would reside in the house as he made the contracted-for repayments to the Vandivers. Additionally, under the contract he remained primarily responsible for all taxes and insurance on the property. In that situation, it appears substantially likely to this Court that the true intention of the parties in entering into the contract was to provide for Lambert both a contractor and a source of funds to finish the improvements to his property and that the conveyance of the fee title to the property to the Lamberts was, in actuality, nothing more than an offering of the property to stand as security for the repayment of the funds expended on the improvement project. In such a situation, there is long-recognized precedent in this state that parol evidence may be presented on that question, and upon proper proof, a court of equity may recast a deed absolute on its face as a mortgage. Sweet v. Luster, 513 So.2d 1240, 1242 (Miss.1987); Harris v. Kemp, 451 So.2d 1362, 1365 (Miss.1984).
*623 ¶ 23. Due to the fact that the terms of Lambert’s repayment obligation under the contract were not proven with any measure of certainty at the original trial of this cause, we conclude that the chancellor’s finding that Lambert had, in fact, defaulted under the contract was not established by competent evidence. We, therefore, find it necessary to reverse the matter and remand.
¶ 24. Because the issues brought in this appeal were not properly framed by the pleadings prior to trial, and because of the concern of this Court that legal or equitable principles necessary to arrive at a just result in this case may not have been properly considered by the chancellor because of the absence of such pleadings, we suggest that, after remand, the parties be directed to file such supplemental and amended pleadings as would appear appropriate in the circumstances to properly define the issues actually to be tried.
¶ 25. If, on remand, the chancellor determines as a matter of fact that this transaction was, in actuality, nothing more than a construction contract with the contractor providing the funds for construction and the property owner offering a deed to his property to secure repayment of those funds, then the issue of the admissibility of parol evidence to vary the amount of money contemplated to be expended on the project may arise. In fact, it appears relatively certain that it will, since there was testimony in the record that, after the completion of the house began, Lambert insisted on a number of changes in the plans beyond those originally envisioned by the parties and were the sort of changes that involved additional costs. Such evidence showing that, by subsequent agreement — even if not reduced to writing' — -the parties agreed to expand the nature of the construction and thereby increase the amount of money expended in completion of the agreed-upon project would appear admissible under the holding and discussion in such cases as City of Mound Bayou v. Roy Collins Construction Co., Inc., 499 So.2d 1354, 1358 (Miss.1986).
¶ 26. If it is determined that the Vandi-vers are entitled to full recompense for all expenses and costs related to the improvement project on Lambert’s home, then they should be permitted to offer proof of those expenditures along with evidence of what would constitute a reasonable measure of profit to them for acting as general contractors on the project. That amount should, in equity, be awarded to the Vandi-vers in order to make them whole. However, if that amount, on the competent proof presented at trial, is shown to be less than the proceeds derived from the sale of Lambert’s home after his death, then to permit the Vandivers to retain any sums in excess of the amount required to fully reimburse them and allow them a reasonable profit would, in the view of this Court, constitute an inequitable forfeiture. Rather, if the chancellor determines that the true purpose of the deed in question was to serve as a mortgage securing the repayment of any amounts due the Vandivers under the contract, then the sale of the home would, in equity, be considered as nothing more than a foreclosure of that mortgage, entitling the Vandivers to reimbursement of the amounts properly secured thereby, but likewise entitling Lambert’s estate to any surplus arising after satisfaction of all such secured indebtedness. See Reese v. Ivey, 324 So.2d 756, 757 (Miss.1976).
¶ 27. THE JUDGMENT OF THE CHANCERY COURT OF TISHOMIN-GO COUNTY IS REVERSED AND REMANDED FOR SUCH FURTHER PROCEEDINGS AS ARE CONSISTENT WITH THE TERMS OF THIS OPIN *624 ION. COSTS OF THE APPEAL ARE ASSESSED ONE-HALF TO THE APPELLANT AND ONE-HALF TO THE APPELLEES.
KING AND SOUTHWICK, P.JJ., BRIDGES, THOMAS, LEE, IRVING, MYERS, AND BRANTLEY, JJ., CONCUR. CHANDLER, J., NOT PARTICIPATING.